

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2008

# USA v. Weatherly

Precedential or Non-Precedential: Precedential

Docket No. 07-1019

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Weatherly" (2008). *2008 Decisions.* Paper 1336.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1336

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1019

———

UNITED STATES OF AMERICA

v.

THOMAS WEATHERLY,

*Appellant*

———

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 06-cr-00258)
District Judge: Honorable Anne E. Thompson

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2008

Before: FUENTES, CHAGARES, and VAN ANTWERPEN,
*Circuit Judges*.

(Filed: March 31, 2008)

Lisa Van Hoeck, Esq.
Office of Federal Public Defender
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

     *Counsel for Appellant*

Eric H. Jaso, Esq.
George S. Leone, Esq.
Steven G. Sanders, Esq.
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

     *Counsel for Appellee*

———

## OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Thomas Weatherly appeals from the judgment of conviction and sentence entered by the District Court for the District of New Jersey on December 20, 2006. For the following reasons, this Court will affirm.

I.

2

At approximately noon on August 31, 2005, Officer John Ryel observed Thomas Weatherly sitting in Zelley Alley in Trenton, New Jersey. *Appendix* ("*App.*") at 144. As Officer Ryel approached Weatherly, he realized that Weatherly was drinking alcohol in public in violation of a city ordinance. *Id.* at 144-45. When requested by Officer Ryel, Weatherly provided his name and identification, and Officer Ryel radioed this information into a police dispatch in order to conduct a warrant check. *Id.* at 146-47. During this encounter, Weatherly made no attempt to resist arrest or otherwise flee. *Id.* at 173.

Upon hearing back from the police dispatch, Officer Ryel learned that Weatherly had an active warrant out for his arrest. *App.* at 149. A few minutes prior to receiving the call about the active warrant, in response to a call to radio dispatch by Officer Ryel, Detective Luis Medina arrived at the scene. *Id.* at 210A-11, 148-49. Both Officer Ryel and Detective Medina stated that as they were helping Weatherly to his feet in order to arrest him for the active warrant, they observed a handgun protruding out of the waistband in the rear of his pants. *Id.* at 149, 211-12. Upon seeing the weapon, Detective Medina seized the gun and the officers handcuffed and arrested Weatherly. *Id.* at 150, 212.

Weatherly was charged in an indictment with violating 18 U.S.C. § 922(g)(1), as a prior convicted felon in

3

possession of a firearm.[1]  *App.* at 14.  Weatherly's defense at trial "was that the officers found the firearm in question in the alley near Mr. Weatherly, assumed it was his, and embellished their story to strengthen their case against him."  *Defendant's Brief* ("*Def. Br.*") at 7; *see also App.* at 297.  In support of this theory, Weatherly introduced the following evidence at trial.

First, Weatherly described a discrepancy in the testimony of the officers as to whether Weatherly was sitting throughout the entirety of the encounter.  *Def. Br.* at 7.  Officer Ryel's testimony seems to indicate that Weatherly was seated throughout the encounter.[2]  *App.* at 149, 172.  However, Detective Medina stated that Weatherly was standing at some point during the encounter, and was told to sit while Officer Ryel and Detective Medina waited for a response about the warrant check.[3]  *Id.* at 211-12.

---

[1] Weatherly was also charged with violating 18 U.S.C. § 924(e)(1), which provides for a mandatory minimum sentence of fifteen years for a felon-in-possession convicted under 18 U.S.C. § 922(g) who also has sustained three or more convictions for violent felonies or serious drug offenses.

[2] It is not entirely clear that Officer Ryel stated that Weatherly was seated throughout the entire encounter, only that he was seated when Officer Ryel first observed him and was seated when advised of the active warrant.

[3] Weatherly argues that this discrepancy is important, because if Weatherly was standing at some point prior to the

4

In addition, Weatherly offered evidence to attempt to prove that it was common to find abandoned guns in Zelley's Alley. Detective Jerome James Commiso testified that 152 abandoned guns were found in Trenton, New Jersey during 2005. *App.* at 233. However, on cross examination, Detective Commiso stated that no abandoned guns were recovered in Zelley Alley (or the immediately surrounding area) during 2005. *Id.* at 242. Weatherly also introduced the testimony of Carniell Peagler, a 20-year-old ex-convict who testified that while playing pickup baseball[4] in a field adjacent to Zelley Alley, he observed gang members stashing or discarding guns in Zelley Alley. *Id.* at 257.

Weatherly also offered evidence in an attempt to demonstrate that he was not in possession of a weapon shortly before the arrest. Bernadette Humphrey, Weatherly's wife's adult daughter, testified that when Weatherly left the house at approximately 11:20 a.m., she never saw "the handle of a handgun sticking out of his pants" or "any bulges in his waistband area." *App.* at 307. Longino Martinez, who worked at the liquor store where Weatherly (a regular customer) allegedly bought his alcohol, stated that during

---

arrest for the active warrant, Officer Ryel and Detective Medina should have been able to see the gun. *Def. Br.* at 7.

[4] Despite testifying that he played baseball "five days out of a week" during the summer, Peagler was unable to remember what position he played and admitted that he did not know the positions in baseball. *App.* at 261-63.

August 2005 he never observed a customer with a gun and would have called the police if he had. *Id.* at 284-85. However, on cross examination, Mr. Martinez testified that he did not recall August 31, 2005 in great detail, and he further testified that he does not pay a lot of attention to Weatherly when he is in the store. *Id.* at 288-89.

Before trial began, Weatherly submitted the following proposed "mere presence" jury instruction in order to explain to the jury the legal justification for his defense theory: "Mere presence in the area of any contraband, including a firearm, or awareness of its location is not sufficient to establish possession." *App.* at 63. After the judge declined to include the "mere presence" instruction in her proposed jury charge on the issue of possession, Weatherly objected and explained that the "mere presence" instruction went to the very heart of his defense. *Id.* at 297-298. The District Court, however, stated in response to the request to include the "mere presence" instruction, "I don't think it's relevant." *Id.* at 298.

Instead, the District Court gave the following instructions to the jury regarding the issue of "possession":

> In order to sustain its burden of proof for the crime of possessing a firearm as charged in the indictment, the Government must prove . . . that the defendant knowingly possessed the firearm described in the indictment.

\* \* \*

6

To possess means to have something within your control. This does not necessarily mean that you must hold it physically, that is to have actual possession of it. As long as the firearm is within your control, you would possess it.

Proof of ownership is not required. The Government is not required to prove that at the time of possession the defendant knew he was breaking the law. It is sufficient if you find that the defendant knowingly possessed the firearm charged.

Knowingly is defined as knowledge, voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

\* \* \*

Now, to possess means to have it within the person's control. That does not mean, and I said earlier, it doesn't have to be held physically. It doesn't even have to be on the person. But in this case, the proofs and the allegations are that the defendant had it on his person [and] had actual possession of it. In other words, you can be in possession of a weapon in your car and you can be 25-50 feet from the car. But that's not this case. That's all I'm saying. This case, the allegation is that the defendant had possession of

7

it, actual possession on his person.

> To satisfy the possession element, you must find that the defendant knowingly possessed – we said that earlier.

*App.* at 343-46.

In summation, Weatherly conceded that he was only contesting the issue of whether he "possessed" the gun. *App.* at 364. Weatherly argued that his guilt hinged upon the credibility of Officer Ryel and Detective Medina, *id.*, and he asserted that Ryel and Medina lied in their testimony. *Id.* at 370-72. In rebuttal, the Government argued that Weatherly failed to show any reasons why Ryel and Medina would lie. *Id.* at 384. Towards the end of his rebuttal, the Government posed this rhetorical question: "Why would Officer Ryel and Detective Medina risk their 32-34 years of experience on the police force over this case?" *Id.* at 396. Weatherly's attorney objected to this statement as "vouching for the witnesses," but the District Court never ruled on the objection. *Id.* at 396-397.

On September 8, 2006, the jury returned a guilty verdict against Weatherly. *App.* at 2. At the sentencing hearing on December 15, 2006, Weatherly argued that the application of the Armed Career Criminal Act, and particularly 18 U.S.C. § 924(e)(1), violated his Fifth and Sixth Amendment rights. *Id.* at 409-10. However, the District Court disagreed, and sentenced Weatherly to 200 months' imprisonment, to be followed by five years' supervised

release.  *Id.* at 418-19.  Weatherly filed a timely notice of appeal on January 4, 2007.  *Id.* at 1.

## II.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231.  This Court has appellate jurisdiction to review the defendant's appeal of his conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Because a different standard of review applies to each of Weatherly's three issues, these standards will be addressed individually with respect to each issue in the analysis section.

## III.

### *A. Jury Instructions*

The District Court's refusal to give a requested jury instruction is reviewed for abuse of discretion.  *United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006).  "A defendant is entitled to an instruction on his theory of the case where the record contains evidentiary support for it."  *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999).  "A court errs in refusing a requested instruction only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant."  *Id.*  Because the actual instructions substantially covered Weatherly's requested "mere presence" instruction and because Weatherly was not prejudiced by the District Court's refusal to give the "mere presence" instruction, the

District Court did not err in refusing to include Weatherly's proposed instruction in her actual jury instructions.

Weatherly argues that because the actual instructions failed to include the explanation that the defendant had to "intend to exercise dominion and control"[5] over the firearm, the actual instructions did not substantially cover his requested instruction. *Def. Br.* at 15. As a result, Weatherly argues that the jury could have found him guilty even if they believed his defense, because the actual instructions defined possession to include the situation where the firearm was simply near him or susceptible to his control. *Id.* However, this is an incorrect interpretation of the actual jury instructions.

At two different points during the jury instructions, once at the beginning and once at the end, the District Court clearly indicated that the government must prove that Weatherly "knowingly possessed" the firearm in order to find him guilty. *App.* at 343, 346. The District Court stated that "[k]nowingly is defined as knowledge, voluntarily and

---

[5] Although Weatherly objected to the District Court's rejection of his proposed "mere presence" instruction, Weatherly failed to object to the District Court's instructions defining "possession" and "knowingly." *App.* at 296-98. Therefore, we review any alleged error in the actual jury instructions for plain error, and we conclude that Weatherly's arguments fail under this standard. *Gov't of Virgin Islands v. Smith*, 949 F.2d 677, 681 (3d Cir. 1991).

intentionally, and not because of mistake or accident or other innocent reason." *Id.* at 344-45. The District Court defined "possession" to mean "to have something within your control." *Id.* at 344. Putting those two definitions together, the District Court's jury instructions defined the "possession" element of the felon-in-possession statute to mean "to voluntarily and intentionally have [a firearm] within your control." *Id.* at 343-46. Therefore, the actual jury instructions covered Weatherly's proposed "mere presence" instruction, because the jury could not find that Weatherly knowingly possessed the firearm under the actual jury instructions due simply to his "[m]ere presence in the area of any contraband, including a firearm, or awareness of its location." *Id.* at 63, 343-46.

Alternatively, even if the actual jury instructions did not substantially cover Weatherly's proposed jury instruction, the District Court did not err because the "mere presence" instruction was not "so important that its omission prejudiced the defendant." *See Davis*, 183 F.3d at 250. At trial, the Government's theory was that Weatherly *actually* possessed the firearm. *See App.* at 355 (Government's closing statement). In addition, the District Court's jury instructions made it clear at several points that this was a case of *actual* possession, not *constructive* possession.[6] The "mere

---

[6] "But in this case, the proofs and the allegations are that the defendant had it on his person [and] had actual possession of it. In other words, you can be in possession of a weapon in your car and you can be 25-50 feet from the car. But that's not this

11

presence" defense is clearly not relevant or applicable to a case where the Government's allegations and the District Court's instructions limit the theory of "possession" to actual possession. *See*, *e.g.*, *United States v. Meads*, 479 F.3d 598, 601-02 (8th Cir. 2007). Because the "mere presence" instruction is not relevant to this actual possession case, Weatherly was not prejudiced by the omission of his proposed jury instruction; therefore, the District Court did not err in refusing to give the proposed instruction.

## B. Vouching

In order for vouching to be improper, the prosecutor's assurance of a witness's credibility must be "'based on either the prosecutor's personal knowledge, or other information not contained in the record.'" *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998)). Weatherly contends that the prosecutor improperly vouched for the credibility of the government witnesses by posing the following rhetorical question: "Why would Officer Ryel and Detective Medina risk their 32-34 years of experience on the police force over this case?" *App.* at 396. This Court concludes that the statement made by the prosecutor in his rebuttal was not improper for two reasons.

---

case. That's all I'm saying. This case, the allegation is that the defendant had possession of it, actual possession on his person." *App.* at 345-46.

First, although we acknowledge that in some cases statements that a police officer would be risking his career to lie under oath are improper vouching,[7] the statements by the

---

[7] In *United States v. Pungitore*, 910 F.2d 1084, 1125 (3d Cir. 1990), this Court determined that the prosecutor's vouching was improper where "there was no evidence backing the prosecutor's comments that the U.S. Attorneys and law enforcement officers could not have behaved as unscrupulously as defense counsel alleged they did without violating their oaths of office and jeopardizing their careers." However, the *Pungitore* case dealt with a situation where the prosecutor invoked his own oath of office to defend the credibility of government witnesses, a situation that greatly concerned this Court and one which is not before us today. *Id.*

This Court also notes that we look favorably upon the comments of Judge McKee, who responded as follows to a similar argument by the prosecutor in the case before him: "That argument [that the government agent would not risk his career to lie] was forceful, responsive, and absolutely proper. The Assistant U.S. Attorney was asking the jury to reach a common sense conclusion that the agent had too much to lose to commit perjury merely to convict this defendant. It was the kind of effective and logical response to an attack on an agent's credibility that has been made in countless numbers of closing arguments, and will be made in countless more." *United States v. Bethancourt*, 65 F.3d 1074, 1082 (3d Cir. 1995) (McKee, J., dissenting) (dissenting from the majority's conclusion that *other* improper statements by the prosecutor did not constitute plain error).

13

prosecutor in this case were proper because they were based on evidence in the record. During Officer Ryel's redirect, the prosecutor asked Ryel what would be taken into consideration by his superiors in making the decision of whether to promote him from the position of police patrol officer (an entry level position that Ryel currently held) to Sergeant (a supervisory position). *App.* at 184. Ryel testified that in addition to the result on the written exam and sick time, he stated his superiors would consider "disciplinary action taken against [him] if [he] had any." *Id.* at 185. Although not actually introduced into evidence, the average juror could easily infer that a police officer who conspired with another officer to deliberately fabricate evidence and perjured himself in open court while testifying under oath in an official capacity would risk at least *some* sort of disciplinary action. Therefore, the prosecutor's rhetorical question about why the police officers would risk their careers to testify falsely against this single defendant was proper because it called for an inference directly based upon evidence in the record.

Second, the prosecutor's statement in this case was not improper vouching because it was a reasonable response to allegations of perjury by Weatherly's attorney. When determining whether a prosecutor's statements improperly vouched for a witness's credibility, the statements must be considered in context. *United States v. Brennan*, 326 F.3d 176, 186 (3d Cir. 2003). In this case, the prosecutor gave his closing argument first, and there are no statements from that portion of his argument at issue here. *App.* at 350-59. Then, Weatherly's attorney delivered her closing argument, which presented the defense's single theory: the police officers

14

found a gun near the defendant, conspired with each other to lie about the incident, and then proceeded to perjure themselves in court. *Id.* at 360-79. Defense counsel speculated at some length that the officers fabricated their story because they were under "enormous pressure" and wanted to demonstrate that they were "relevant" because "there's terrible crime in Trenton."[8] *App.* at 371-72. It is

---

[8] The defense counsel told the jury:

If they thought the gun was his, does it make sense that they would decide that the ends would justify the means? And consider the climate in which they work. There's terrible crime in Trenton.

My goodness, you're hearing that there were 152 found and abandoned guns. . . . [T]hat is a terrible problem in Trenton. This is the climate in which these officers work.

\* \* \*

These are two officers on the same police force, the same fraternity if you will. Both trying and struggling with the crime that's facing Trenton right now and was facing Trenton last summer.

15

permissible for counsel to argue inferences, but an inference must flow logically and convincingly from the facts in the record. *See United States v. Navarro*, 145 F.3d 580, 593 (3d Cir. 1998). Defense counsel's argument in this case crossed the line, urging the jury to speculate rather than infer. It was only in response to these accusations, in his rebuttal, that the prosecutor felt the need to address the credibility of the two

---

> So ask yourself whether or not it makes sense whether these officers are under enormous pressure. They're under enormous pressure to attempt to demonstrate that they are making a difference in the crime that is facing Trenton, that they're making a difference by making an arrest. Maybe you can understand that. Maybe you can understand that sometimes when we're under pressure, we feel this enormous burden and we want to demonstrate that we're relevant, that we are making a difference.
>
> * * *
>
> It's been said that how you treat the least of my brothers is how you treat me.

*App.* at 371-72.

16

witnesses whom the defense attorney painted as not credible. When looked at in context, this Court concludes that the statement was nothing more than a brief and appropriate response to the defense attorney's speculation and attacks on the credibility of the government witnesses.[9]

Even if we had determined that the prosecutor's statement was improper vouching, it would have been harmless error. This Court reviews improper vouching for witness credibility under the harmless error standard.[10]

---

[9] Although there was evidence that 152 guns were found on the streets of Trenton in 2005, there was no direct evidence that the officers were "under enormous pressure to attempt to demonstrate that they are making a difference in the crime that is facing Trenton, that they're making a difference by making an arrest." *App.* at 372. In fact, the evidence was to the contrary. During redirect, Officer Ryel stated that his superiors were not focused on foot patrol officers making arrests, but rather were "primarily focused on quality of life issues," such as drinking in public. *Id.* at 185-86.

[10] The Government argues that because Weatherly failed to request relief (i.e. mistrial), this Court should only review the vouching issue for plain error. *Gov't Br.* at 28 (citing *United States v. Richards*, 241 F.3d 335, 341-42 (3d Cir. 2001)). Weatherly made a contemporaneous objection after the prosecutor asked, "Why would Officer Ryel and Detective Medina risk their 32-34 years of experience on the police force over this case?" *App.* at 396. The District Court never ruled on

*United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995). "[V]ouching that is aimed at the witness's credibility and is based on extra-record evidence is deemed non-constitutional error." *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 286 (3d Cir. 1999). This Court finds non-constitutional error harmless when "it is highly probable that the error did not contribute to the judgment." *Id.* (quoting *Gov't of Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976)). To determine if the defendant was prejudiced, the Court must consider "the scope of the comments and their relationship to the proceeding, the extent of any curative instructions, and the strength of the evidence against defendants." *Dispoz-O-Plastics*, 172 F.3d at 286.

Here, even if the rhetorical question posed by the prosecutor is considered improper vouching, any error stemming from the comment was harmless. First, as stated above, this comment was made in rebuttal, in response to speculation and an attack by the defense attorney on the

---

this motion, and we do not fault Weatherly for failing to seek relief. Therefore, we review this statement under a harmless error standard.

However, all other statements contained in the prosecutor's closing argument and rebuttal were not timely objected to, and any arguments regarding improper vouching related to these other statements would be subject to plain error review. *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006). Under this more stringent standard, we conclude that none of the other statements warrants reversal.

18

credibility of the government witnesses. As such, it is likely that the jury simply viewed this statement as a response to the defendant's accusations. In addition, this statement was brief and isolated, when it is considered that the prosecutor's rebuttal alone stretches for 18-pages in the transcript. *App.* at 379-397. Therefore, it is highly unlikely that this statement had any influence on the jury. Finally, prior to the closing arguments, the judge thoroughly instructed the jury as to the nature of counsel's arguments and credibility issues.[11] These instructions make it highly probable that the alleged improper vouching by the prosecutor did not contribute to the jury finding Weatherly guilty. *See Dispoz-O-Plastics*, 172 F.3d at 286. For all of the above reasons, even if the prosecutor's statement was improper vouching, this Court concludes that the improper vouching was harmless because we have a "sure conviction that the error did not prejudice" Weatherly. *See id.*

### C. Constitutionality of the Armed Career Criminal Act

This Court reviews challenges to the constitutionality of a statute under a *de novo* standard of review. *United States v. Singletary*, 268 F.3d 196, 198-99 (3d Cir. 2001).

---

[11] The District Court told the jurors that the statements of counsel are meant to persuade, and should be considered as argument, not evidence. *App.* at 331. Also, the judge told the jurors that they are the sole judges of credibility, and that the testimony of law enforcement officers does not deserve any more weight than the testimony of non-government employee witnesses. *Id.* at 338-40.

Weatherly challenges the constitutionality of the Armed Career Criminal Act, which imposes a mandatory minimum fifteen-year prison sentence for felons-in-possession convicted under 18 U.S.C. § 922(g) who have sustained three (or more) convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). Specifically, Weatherly asserts that the statute is unconstitutional because the jury, not the District Court, should determine whether any of his prior convictions qualified as "violent felonies" or "serious drug offenses" under 18 U.S.C. § 924(g)(1). However, as Weatherly concedes, this argument was rejected already by this Court in *United States v. Coleman*, 451 F.3d 154, 161 (3d Cir. 2006).[12] In light of our decision in *Coleman*, therefore, we reject Weatherly's argument that the Armed Career Criminal Act is unconstitutional.

IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the above reasons, the conviction and sentence of the District Court will be affirmed.

---

[12] Weatherly raises this issue before this Court only to preserve the issue for review.

20