NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3108
_____

UNITED STATES OF AMERICA

v.

ANDREW TERRY,
              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-10-cr-00029-001)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 15, 2013

Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Filed: May 21, 2013 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Defendant Andrew Terry appeals from his conviction in the United States District

Court for the Western District of Pennsylvania on charges of being a felon in possession

of a firearm, in violation of 18 U.S.C. § 922(g)(1).  We will affirm.

I.

Because we write principally for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts that are necessary to our analysis.

On the evening of March 11, 2009, a group of plainclothes detectives was traveling in an unmarked car through Northview Heights, a relatively high crime neighborhood in Pittsburgh, Pennsylvania, when they noticed a black Subaru that was parked along the side of the road with its driver side door open and extending into the street. Because the open door was obstructing traffic, the detectives stopped their vehicle. From their vantage point, they could see that Terry was standing next to the passenger side of the vehicle with an open 40-ounce bottle of malt liquor in his left hand. Detective Scott Love then exited the detectives' vehicle and identified himself as a Pittsburgh police officer. Detective Love intended to cite Terry for an open container violation or ask him to pour out the liquor.

According to Detective Love's testimony, which the District Court found to be credible, Terry then made a series of suspicious movements: he turned around slightly, bent toward the passenger side of the vehicle while reaching toward the car with his right hand, and made what Detective Love described as a "shoving motion" toward his waistband. Based upon his experience and training, Detective Love believed that Terry was concealing either a weapon or contraband in his waistband.

Detective Love then ordered Terry to put his hands up, place the bottle on the roof of the car, walk toward the rear of the vehicle, and place his hands on the trunk. Terry complied, and Detective Love then placed his hand on Terry's waistband area and felt what he believed to be the handle of a gun. At that point, Terry attempted to flee. Detective Love ran after him, tackled him to the ground, and seized the firearm. He and the other detectives then placed Terry under arrest.

Before trial, Terry moved to suppress the firearm as the fruit of an unlawful search. After a hearing, the District Court denied the motion. Terry's case proceeded to trial. At the close of evidence, the District Court gave the following instruction to the jury.

> "You've also heard testimony that after the crime, or during when the course of the crime was supposedly being committed, Mr. Terry attempted to flee.

> "If you believe that Mr. Terry attempted to flee, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty of the crime charged and was trying to avoid punishment. On the other hand, sometimes an innocent person may attempt to flee for some other reason. Additionally, merely resisting arrest is not the same as attempting to flee.

> "Whether or not this evidence causes you to find that the defendant has consciousness of guilt for the crime charged, and whether that indicates he committed the crime charged, is entirely up to you as the sole judges of the facts."

App. at 314. The jury returned a verdict of guilty, and the District Court sentenced Terry to 180 months in prison.

3

Terry's timely notice of appeal to this Court followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291. We apply a mixed standard of review to a district court's decision on a motion to suppress. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). We review the district court's factual findings for clear error, but exercise *de novo* review over its application of the law to those facts. *United States v. Pavulak*, 700 F.3d 651, 660 (3d Cir. 2012). We review for abuse of discretion a district court's decision whether to give a requested jury instruction. *United States v. Weatherly*, 525 F.3d 265, 269 (3d Cir. 2008).

## III.

## A.

Terry argues that the District Court erred in denying his motion to suppress the firearm as fruit of an unlawful search. He claims that Detective Love did not have reasonable suspicion to conduct a patdown under *Terry v. Ohio*, 392 U.S. 1 (1968). We disagree.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Although the Fourth Amendment requires a warrant based upon probable cause before police can arrest a suspect, "the realities of law

4

enforcement allow police officers to briefly detain an individual based upon 'articulable suspicion' and then to perform a limited protective 'patdown' for weapons during that detention 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.'" *United States v. Navedo*, 694 F.3d 463, 467 (3d Cir. 2012) (quoting *Terry,* 392 U.S. at 30). Under *Terry*, such a brief investigative detention is permissible if the officer has "reasonable suspicion" – that is, if he can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. A protective search or patdown is permissible if the officer has reasonable suspicion to believe that a suspect is "armed and dangerous," but the Fourth Amendment limits the scope of such a search to a "carefully limited search of the outer clothing . . . in an attempt to discover weapons which might be used to assault him [or her]." *Navedo*, 694 F.3d at 467-68 (quoting *Terry*, 392 U.S. at 30).

For courts charged with assessing whether an officer had reasonable suspicion, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. at 21-22. To do so, we consider "the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior."

5

*Navedo*, 694 F.3d at 468 (quoting *United States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002)).

Here, Detective Love had reasonable suspicion both for his initial stop of Terry and his subsequent patdown. When Detective Love saw Terry standing on a public street with an open 40-ounce bottle of liquor, he had reasonable suspicion – indeed, probable cause – that Terry was violating a city ordinance outlawing the possession of open containers of alcohol in public. Detective Love's subsequent patdown of Terry was justified by the "totality of the circumstances." *Navedo*, 694 F.3d at 468. Based on Detective Love's testimony, which the District Court found credible, after Detective Love identified himself as a police officer, Terry turned around slightly, bent toward the passenger side of the vehicle while reaching toward the car with his right hand, and made a "shoving motion" toward his waistband. Based upon his experience and training, Detective Love fairly construed these movements as Terry attempting to conceal a weapon in his waistband. Given the late hour and the high-crime neighborhood, Detective Love had reasonable suspicion that Terry was armed and dangerous. Detective Love's subsequent patdown was therefore justified under *Terry*. *See United States v. Goodrich*, 450 F.3d 552, 561-62 (3d Cir. 2006) ("lateness of the hour of the stop" combined with "reputation of the area for prior thefts" of chemical in question moved case "closer to the elusive line separating constitutional from unconstitutional government action"); *United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997)

6

(defendant's "furtive hand movements" and "refusal to obey the officers' orders" constituted reasonable suspicion supporting patdown).

B.

Terry also argues that the District Court abused its discretion when it overruled his objection to the government's request for a jury instruction on evidence of flight as consciousness of guilt. Terry does not challenge the substance of the instruction. Rather, he claims that because he was tackled by Detective Love after only about three steps, "flight was an impossibility," Appellant's Br. at 26, and the prejudicial value of the jury instruction therefore outweighed its probative value.

A party is entitled to a jury instruction "where the record contains evidentiary support for it." *Weatherly*, 525 F.3d at 270 (internal quotation marks omitted). "In reviewing a jury instruction, we look to see if 'the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury.'" *United States v. Hart*, 273 F.3d 363, 373 (3d Cir. 2001) (quoting *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir. 1985)).

We have reviewed the record in this case and we agree with the District Court that there was evidence from which a jury could conclude that Terry attempted to flee. Given this evidentiary support, the District Court did not abuse its discretion by granting the government's request for an instruction on evidence of flight as consciousness of guilt.

7

IV.

For the reasons set forth above, we will affirm the District Court's judgment of conviction and sentence.