NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3801
_____

UNITED STATES OF AMERICA

v.

RAMEL MOTEN,
a/k/a SMIZ, a/k/a SMELLY

Ramel Moten,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cr-00620-01)
District Judge:  Hon. Lawrence F. Stengel

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2015

Before:  CHAGARES, JORDAN, and BARRY, *Circuit Judges*.

(Filed: May 11, 2015)
_____

OPINION*
_____

---

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Ramel Moten appeals his conviction and sentence in the United States District Court for the Eastern District of Pennsylvania for thirty-one of the eighty-nine counts contained in a superseding indictment charging him and nineteen other defendants with various drug, firearm, racketeering, and assault offenses. The charges against Moten stemmed from his leadership of a large-scale drug trafficking enterprise. We reject the several grounds of alleged error that he raises, and we will affirm.

I. **Background**[1]

A. **The Harlem Boys Enterprise**

Moten was a leader of a violent gang known as the "Harlem Boys" or "Young Hit Men" that sold narcotics for nine years in the Bartram Village Housing Development ("Bartram Village") located in Southwest Philadelphia. From about October 2001 through approximately October 6, 2010, the Harlem Boys controlled the illegal drug trade in Bartram Village, and, for most of that time, Terrance Hamm ran the street-level operations of the enterprise, which trafficked in crack cocaine, marijuana, and prescription drugs. Hamm would obtain bulk quantities of drugs from various sources of supply, prepare the drugs for sale, and distribute them himself and through a network of street-level drug dealers. He and his co-conspirators used their residences and other

---

[1] Because Moten was convicted after a jury trial, "we must defer to the jury's verdict and view the evidence in the light most favorable to the government. Therefore, we recount the government's [uncontested] version of the facts." *United States v. Serafini*, 233 F.3d 758, 763 n.4 (3d Cir. 2000) (citation omitted).

houses or apartments located in or near Bartram Village to store, cook, package, and sell crack cocaine, and to store drug proceeds, firearms, and ammunition.

Around April 2007, after several search warrants were executed in Bartram Village, Hamm stepped back from his involvement in the organization's criminal activity. After that, Moten became the leader of the Harlem Boys. Hamm, however, later resumed his drug trafficking activities and continued to obtain, supply, and sell crack in and around Bartram Village.

Even before assuming a leadership role, Moten was a supplier and distributor of illegal narcotics and a gunman for the enterprise. He committed acts of violence with other members of the enterprise to protect their turf and frequently provided firearms to his co-conspirators for use in robberies, assaults, and other crimes. Merrell Hobbs, Reginald Stephens, Bryan Hill, Warren Stokes, Hikeem Torrence, Omar Roane, Damon Turner, Allen Parker, Tayale Shelton, Shyheem Davis, and Anthony Freeman, were also distributors of illegal narcotics and gunmen for the enterprise. Khalil Allen, Andre Tiller, Kareem Pittman, and Carol Miles were distributors of illegal narcotics. Terrance Hamm's brother Charles was a supplier of cocaine to the enterprise and a distributor of illegal narcotics; he also was responsible for the New Jersey drug sales of the enterprise. Kareem Pittman, Melika Parker, and Roneisha Scott maintained premises used by the enterprise to manufacture, package, store, and sell drugs, and to store guns.

Members of the enterprise committed, attempted, and threatened to commit acts of violence, including murder, assault, and robbery, to protect and expand the enterprise's operations. While some acts of violence occurred prior to April 2007, the violence

3

intensified in the years following Terrance Hamm's reduced role and Moten's elevated role in the gang.

## B. Procedural History

The first federal indictment was returned on September 22, 2010. It was revised in an eighty-nine-count superseding indictment returned on September 7, 2011, naming twenty defendants, including Moten. Thirteen of the defendants – Roane, Turner, Shelton, Scott, Freeman, Miles, Tiller, Davis, Pittman, Melika Parker, Allen Parker, Charles Hamm, and Terrance Hamm – subsequently pled guilty to numerous drug trafficking, firearms, and violent crime offenses. Additionally, some of those defendants pled guilty to conspiracy charges under the Racketeering Influenced and Corrupt Organizations Act ("RICO"). The remaining defendants – Moten, Hobbs, Stephens, Hill, Stokes, Torrence, and Allen – proceeded to trial after the District Court denied several pretrial motions. On December 6, 2012, following a ten-week trial, those seven remaining defendants were convicted of many of the charges in the superseding indictment. All of the defendants, other than Allen, now appeal their convictions and sentences.[2]

Moten was initially charged in forty of the eighty-nine counts and was ultimately convicted on thirty-one of those counts. The District Court sentenced him to life imprisonment, plus a consecutive term of 130 years' imprisonment, and, as required by

_____

[2] The several appeals have been consolidated, but because the six appellants raise many discrete issues, we address each appeal in a separate opinion. For convenience, however, we set forth the facts relevant to all of the appeals in this decision and will incorporate them by reference in the other opinions.

law, ten years' supervised release. The sentence also included various fines, assessments, and orders of forfeiture.

## II.    Discussion[3]

Moten raises six issues on appeal: (1) whether the District Court erred in denying his motion for a mistrial, in light of what he says was a variance between charges in the indictment and the evidence adduced at trial; (2) whether the District Court erred in allowing a case agent to testify as to the meaning of certain terms used in recorded conversations; (3) whether one of the prosecutors improperly vouched for the government's witnesses; (4) whether the District Court improperly imposed consecutive enhanced mandatory minimum sentences; (5) whether the District Court erred in refusing to suppress a firearm obtained during a warrantless search; and (6) whether the District Court was required to declare a mistrial because of the cumulative effect of the several alleged errors. We consider each issue in turn.

### A.    Mistrial Due to Variance[4]

Moten argues that, for two reasons, there was a variance between the charges in the indictment and the evidence adduced at trial. First, he says that a number of the overt

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] We review the District Court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Liburd*, 607 F.3d 339, 342 (3d Cir. 2010). We review for plain error arguments Moten did not raise in the District Court. *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002) ("We review for plain error those claims that were not preserved in the district court... .").

5

acts described in count 1 were individual vendettas rather than acts in support of the charged RICO enterprise; and, second, he contends that, if any conspiracy was shown, it was not a single RICO conspiracy but rather a series of unrelated conspiracies. Neither claim bears scrutiny.

A variance occurs "where the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Daraio*, 445 F.3d 253, 261 (3d Cir. 2006) (internal quotation marks and brackets omitted). To demonstrate reversible error from a variance, a defendant "must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). "A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." *United States v. Schoenhut*, 576 F.2d 1010, 1021-22 (3d Cir. 1978). In a RICO case, a variance may occur when the indictment charges a single conspiracy, but the evidence adduced at trial proves the existence of multiple conspiracies. *United States v. Kemp*, 500 F.3d 257, 287 (3d Cir. 2007).

Moten alleges that, based on evidence at the trial, at least four of the seventy-seven acts listed in the superseding indictment turned out not to be related to the RICO conspiracy: the assault on James Coleman, the assault on Alfonso Greer, the gunpoint

6

robbery of Theresa Pitt,[5] and the shootings of Darren Jinwright and Kareem Barnes. We disagree. The District Court correctly concluded that, contrary to Moten's interpretation of the evidence, those acts were part of the Harlem Boys' ongoing campaign of violence and intimidation to preserve their monopoly over their territory at Bartram Village. Specifically, the District Court ruled that, even though there may have been additional personal motivations for the conduct, the charged acts were all committed to demonstrate the Harlem Boys' authority and dominance over their territory and thus were in furtherance of the enterprise. *See United States v. Irizarry*, 341 F.3d 273, 302-03 (3d Cir. 2003) (murder of man who had burglarized mafia enforcer's apartment was act in furtherance of RICO enterprise because it served to "send a message to someone who would demonstrate such complete disrespect of [mafia enforcer's] stature in the enterprise"). Accordingly, there was no variance and declaration of a mistrial was not warranted.

---

[5] It is not clear that Moten objected before the District Court that there was a variance because the robbery of Pitt was unrelated to the RICO enterprise. Regardless of the standard of review we apply to that claim of error, however, it fails. Omar Roane, the gang member who committed the robbery, testified that Pitt was attempting to sell drugs in Bartram Village. Thus, regardless of what may have additionally motivated the robbery, it was calculated to further protect the Harlem Boys' control over their territory. The government charged and proved the existence of a drug-trafficking enterprise that protected its turf through violence and threats of violence. The Pitt robbery is therefore evidence of the RICO conspiracy charged in the indictment. *See United States v. Irizarry*, 341 F.3d 273, 300 (3d Cir. 2003) (conduct aimed at maintaining control over enterprise or enhancing its power or reputation is in furtherance of RICO enterprise). There is, moreover, evidence that Moten threatened Pitt in an attempt to prevent her from testifying against Roane.

Moten further argues that, while the indictment charges one ongoing conspiracy, the evidence adduced at trial demonstrated at most three unrelated conspiracies: an operation run by Terrance Hamm to sell drugs from 2001 to 2007 in Bartram Village; a separate operation run by Charles Hamm to sell drugs in Wildwood, New Jersey; and a separate operation in 2009 and 2010 to sell drugs in Bartram Village. This argument was not advanced in the District Court. Moten concedes that he was a major player in all three conspiracies, which also were comprised of members of the Harlem Boys, but, he says, they were "separate distinct drug operations running parallel, sometimes overlapping but separate competing 'entities.'" (Opening Br. at 33.)

The trial evidence, viewed in favor of the government, proves that wrong. It demonstrated that there was one ongoing conspiracy to traffic drugs in Bartram Village and that the co-conspirators engaged in a number of illegal acts to further that enterprise. The conspiracy operated in multiple cities, with appearances by additional participants, some of whom were occasionally incarcerated, but that did not transform it into multiple conspiracies. *United States v. DeVarona*, 872 F.2d 114, 119 (5th Cir. 1989) ("A single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in the locale of operation." (brackets and internal quotation marks omitted)); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation ... ."). Moten's argument that the District Court plainly erred by not *sua sponte* declaring a mistrial on that basis is without merit.

8

**B.      Admissibility of Case Agent Testimony**[6]

Next, Moten complains that the District Court allowed the case agent to testify as to the meaning of various terms on recorded phone conversations that were played for the jury during trial.  For example, Moten objects to the case agent's describing to the jury his understanding of the terms "lock and load," "we low as shit," "jawn," "I had to let the pump off," "popping fly on you," "four pounder," and "rained on him" because these words or phrases did not require explanation or were not of a coded nature.  (Opening Br. at 36-41.)  But, while the slang may be second nature to Moten, its meaning is not self-evident.  Thus, the agent's testimony was potentially helpful in aiding the jury's understanding of what transpired.  *See* Fed. R. Evid. 701 (lay testimony is permitted where it is "rationally based on the witness's perception; helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge").  The challenged testimony is of a kind widely permitted.  *Cf. United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999) (expert witness could testify, albeit under Rule 702, as to the meaning of ambiguous or coded terms such as the fact that "jawn" meant "cocaine," that to "hit" someone meant to page them on a beeper, that "on post" meant "ready and waiting," and that a "quarter" meant "$2,500").  Furthermore, the agent did not have a "dual role" of fact and expert witness

---

[6] We review the District Court's ruling as to the admissibility of evidence for an abuse of discretion. *United States v. Knight*, 700 F.3d 59, 62 (3d Cir. 2012).  In the absence of an objection, we review a Confrontation Clause challenge for plain error. *United States v. Christie*, 624 F.3d 558, 569 (3d Cir. 2010).

requiring a special instruction and caution to the jury. He testified to facts within his personal knowledge, and, in any event, Moten requested no such instruction at trial.

While not entirely clear, it appears that Moten is also advancing a Confrontation Clause objection. He indicates that there is a Confrontation Clause issue because the case agent's testimony contained information that he could have obtained only through conversations with a non-testifying confidential informant. For example, Moten contends that the agent's testimony that Moten got rid of a bulletproof vest had to be based on off-the-record conversations with an informant because there is "no evidence of record that Moten said that in a recorded conversation." (Opening Br. at 41.) But, that is incorrect. There is a recorded conversation between Moten and a confidential informant in which Moten states that he got rid of the bulletproof vest – Moten cites to it in his opening brief, attaches it as an exhibit, and then further cites to the trial transcript that describes the playing of the recording to the jury. Further, because the statement about the bulletproof vest is Moten's own statement, there is plainly no Confrontation Clause problem. *See Davis v. Washington*, 547 U.S. 813, 823 (2006) (holding that the Confrontation Clause applies only to testimonial hearsay); Fed. R. Evid. 801(d)(2) (statement made by a defendant that is offered against him at trial is not hearsay).

As another example, Moten says that, after the prosecutor played a recorded conversation with the confidential informant in which the informant referenced a woman named "Jewel," the agent testified that "Jewel" was the informant's girlfriend. (App. at 3772.) Moten argues that there were two "Jewels" and that the agent somehow knew "the difference between the two Jewels; one being [the confidential informant's]

10

girlfriend as opposed to Jewel a/k/a Celestine Leavingston." (Opening Br. at 40.) According to Moten, the agent could only have understood that difference because of an off-the-record conversation with the confidential informant. Even if that were true, however, the testimony does not pose a Confrontation Clause problem because it was not offered for the truth of the matter asserted. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *accord United States v. Brown*, 560 F.3d 754, 764 (8th Cir. 2009) (admission of statement regarding the street nickname of victim's attacker did not violate the Confrontation Clause where it was "offered to explain why an officer conducted an investigation in a certain way").

Likewise, Moten complains about the agent's testimony as to other background information regarding the investigation, such as what prompted the agent to seek out a search warrant for the residence of Markita Vareen, a woman alleged to be storing weapons for the Harlem Boys, and what the agent did to obtain Moten's telephone number. Again, however, those statements were not offered for their truth; instead, they were offered to provide context to the investigation and explain the agent's actions and thus do not amount to Confrontation Clause violations. *See United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) (testimony regarding tip that defendant may have had a gun did not violate the Confrontation Clause because it was "offered simply as background evidence" to explain the officers' actions).

11

## C.    Vouching[7]

Moten also argues that, through a number of statements made primarily during closing arguments, the prosecutor vouched for the credibility of government witnesses at trial.  First, the prosecutor referenced the co-conspirators who pled guilty and testified at trial, arguing that their guilty pleas rendered their testimony credible because they accepted responsibility for their actions.  Second, the prosecutor stated during closing arguments that he was present at a proffer session when a government witness received a text message from Moten, thereby, according to Moten, bolstering that witness's credibility.  Third, the prosecutor explained that Moten was not charged with a substantive count of carjacking – even though evidence of his involvement in the carjacking was presented at trial – because the statute of limitations barred Moten's prosecution for that offense.  According to Moten, in so doing, the prosecutor was "trying to put on the white hat for the jury to show that [the government] played by the rules and followed the law."  (Opening Br. at 45.)  Finally, Moten argues, the prosecutor vouched for the government by referring to it as "we."  (*Id.* at 45.)  Moten also complains that during rebuttal, the government continued to vouch for the credibility of its own witnesses; promoted itself as having prosecuted the case in an ethical and professional manner; and refuted the defendants' attacks on the credibility of its witnesses by

---

[7] We review for abuse of discretion the District Court's ruling as to the propriety of prosecutorial statements at trial.  *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).  Here again, in the absence of a contemporaneous objection, our review is for plain error.  *United States v. Berrios*, 676 F.3d 118, 133 (3d Cir. 2012).

explaining that the witnesses did not have access to the case agent's file before they testified.

While some of the statements Moten complains of were made in response to credibility attacks from defense counsel, *see United States v. Weatherly*, 525 F.3d 265, 273 (3d Cir. 2008) ("[T]his [improper vouching] comment was made in rebuttal, in response to speculation and an attack by the defense attorney on the credibility of the government witnesses.  As such, it is likely that the jury simply viewed this statement as a response to the defendant's accusations."), other comments, such as the prosecutor's statement that he was present during the proffer session when the witness received text messages from Moten, are less defensible; it is hard to think of a good reason for a prosecutor to highlight his personal involvement in an investigation.  Nonetheless, the government presented such a tremendous volume of credible evidence that we are left with a sure conviction that any error resulting from the prosecutor's statements was entirely harmless.  *See id.* (improper vouching for witness credibility is reviewed for harmless error); *United States v. Gallagher*, 576 F.2d 1028, 1042 (3d Cir. 1978) ("[I]n view of the amplitude of the evidence proving the appellants' guilt, we cannot say that the unfortunate statements quoted above alone require reversal.").  The government presented weeks of testimony from co-conspirators and victims, detailing the Harlem Boys' extensive illegal – and frequently violent – activities in support of their ongoing large-scale drug trafficking enterprise.  It was the overwhelming evidence presented, not the stray comments of the prosecutor – even those we find concerning – that led to the verdict.  *United States v. Vitillo*, 490 F.3d 314, 328-29 (3d Cir. 2007), *as amended*

13

(Aug. 10, 2007) ("[I]t was certainly ill-advised for the prosecutors to mention their presence at the FBI raid and interview. We hope the United States Attorney for the Eastern District of Pennsylvania will instruct his assistants accordingly. ... Ultimately, however, a new trial is not required here in light of the strong evidence of [the defendant's] guilt.").

### D.   Suppression of Evidence[8]

Moten argues that the District Court erred in denying his motion to suppress a handgun found during a warrantless search executed at co-conspirator Pittman's residence.

On October 7, 2009, police responded to a radio call of a "male with a gun" who entered an apartment building on Harley Terrace in Bartram Village. (App. at 3260.) While searching for the gunman, police detected the smell of marijuana emanating from Apartment 3A. They knocked on the door and were eventually granted entry by a resident of the apartment. Tyreek Artis, who matched the description of the gunman, emerged from a back room and was immediately arrested. As Artis was being arrested, a police officer conducted a protective sweep of the apartment and noticed a .38 caliber Colt revolver in a shoe box in plain view. After obtaining consent to search the apartment, the police also found marijuana and crack cocaine in a closet in the living room. Later, the government recorded a telephone conversation between Moten and a

---

[8] We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

confidential informant, in which Moten identified the revolver and the drugs as "ours." *United States v. Moten*, No. CRIM.A. 10-620-01, 2012 WL 2873368, at \*3 (E.D. Pa. July 13, 2012). Before trial, Moten unsuccessfully sought to suppress the Colt revolver. *Id.* The District Court ruled that the search was reasonable and, in any event, that Moten lacked standing to challenge it.

A warrantless search of a residence is generally forbidden by the Fourth Amendment. *See Maryland v. Buie*, 494 U.S. 325, 331 (1990) ("[A] search of the house … is generally not reasonable without a warrant issued on probable cause."). In *Buie*, however, the Supreme Court articulated an exception for a brief search of a residence in connection with an arrest if the search is limited in time and scope and is intended only to ensure officer safety. *Id.* at 334; *accord United States v. White*, 748 F.3d 507, 511 (3d Cir. 2014). Here, it is clear that the search fits perfectly within that exception. The police officers took a quick look into the room from which the gunman had emerged moments earlier. The District Court determined that they did so to see if there were any other individuals present in the room that may have posed a threat. That search is the type authorized by *Buie* – indeed the facts here are almost identical to those presented there. Accordingly, the District Court did not err in refusing to suppress the evidence and we need not address whether Moten had standing to challenge the search. *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) ("[S]tanding to challenge a search is not a threshold issue that must be decided before reaching the question of whether a search was or was not constitutional.").

15

**E.    Mistrial Due to Cumulative Harm**[9]

Moten further contends that the cumulative effect of all of the alleged errors at trial warranted a mistrial.  A new trial is required on the basis of cumulative errors only when "the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial."  *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (internal quotation marks and brackets omitted).  At most, only Moten's claim based on certain statements of the prosecutor has even arguable merit, and we have concluded that any error in that regard was harmless.  We remain confident that, to the extent there was error, it did not have a substantial influence on the outcome of trial or render it fundamentally unfair.  *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990) (cumulative effect must render trial fundamentally unfair).

**F.    Sentencing Error**[10]

Finally, Moten argues that the District Court erred when it imposed consecutive mandatory sentences under 18 U.S.C. § 924(c).[11]  Moten was convicted of six violations

---

[9]  As we have noted, we review a District Court's denial of a motion for a mistrial for an abuse of discretion.  *Liburd*, 607 F.3d at 342.

[10] We exercise plenary review over the District Court's imposition of consecutive mandatory sentences under 18 U.S.C. § 924(c).  *United States v. Diaz*, 592 F.3d 467, 470 (3d Cir. 2010).

[11] Section 924(c) provides, in relevant part:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime … uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime … be sentenced to a term of imprisonment of not less than 5 years … .

16

of section 924(c), the first of which carried a five-year mandatory minimum sentence, consecutive to other charges.  The District Court imposed consecutive sentences of 25 years for each of Moten's five other section 924(c) convictions, resulting in a total of 130 years' imprisonment, on top of his life sentence.

As Moten recognizes, controlling precedent forecloses his argument that the imposition of consecutive mandatory sentences was error.  In *Deal v. United States*, 508 U.S. 129, 130 (1993), the Supreme Court held that, where the defendant was found guilty in a single criminal proceeding of six counts for using a firearm in connection with a crime of violence, his convictions on the second through sixth counts constituted "second or subsequent convictions" for the purpose of enhancing the statutory term of imprisonment under section 924(c).  In accordance with the Supreme Court's decision in *Deal*, we have similarly held that consecutive sentences are permitted, regardless of whether the section 924(c) convictions arise out of the same criminal episode or act, *United States v. Casiano*, 113 F.3d 420, 426 (3d Cir. 1997), or whether they are charged in a single indictment, *United States v. Coates*, 178 F.3d 681, 683 & n.2 (3d Cir. 1999). Moten does not contend that the rule from those decisions is inapplicable but instead asks us to revisit the holding in *Deal*, echoing the concerns of the dissent in that case.  As we have noted, however, we are "bound by the Supreme Court's interpretation of § 924(c)(1)

---

...

In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years ... .

18 U.S.C. § 924(c)(1)(A), (C).

in *Deal* … . It is for Congress to ameliorate the result of application of the statute according to its terms, if it deems it too harsh." *Casiano*, 113 F.3d at 426. Thus, as with Moten's other claims of error, this one must fail.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.