## UNITED STATES of America, Appellant,

v.

## Willis Michael DANIELS, Jr., Appellee.

### No. 82–5054.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1982.

Decided Jan. 11, 1983.

---

William G. Otis, Sp. Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., N. George Metcalf, Asst. U.S. Atty., Richmond, Va., on brief), for appellant.

Mark D. Mariner, Richmond, Va. (Dennis W. Dohnal, Theodore I. Brenner, Bremner, Baber & Janus, Richmond, Va., on brief), for appellee.

Before BUTZNER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The defendant was charged with an assault with a dangerous weapon on a fellow inmate in a federal prison and with conveying the weapon into a federal prison in violation of 18 U.S.C. §§ 113(c) and 1792. His first trial ended in a mistrial. At his second trial, he moved to dismiss the prosecution, claiming a violation of the speedy trial provision of the Sixth Amendment, of the due process clause of the Fifth Amendment, and of Rule 48(b), Fed.R.Crim.P. The indictment was dismissed by the District Court under Rule 48(b) "for unnecessary delay" and the Government has appealed. We reverse.

On May 16, 1980, an inmate at a federal correctional institution was assaulted by two other inmates, one of whom used in the assault a rod with an attached blade. The defendant was given an "incident report" and placed in segregation that evening. Five days later, on May 21, 1980, the victim identified the defendant as his assailant. A week later FBI Agent Palfi interviewed the defendant who confessed to the attack. The defendant did not, however, implicate any one else in his confession. Palfi suspected that another inmate was involved and continued his investigation in an effort to identify the other participant. In May or early June, 1980, Palfi learned through a prison source of a witness to the attack. In August he interviewed this witness. The witness refused to talk. Palfi, however, remained in contact with the witness and was finally told in November, 1980, that the witness was willing to testify. Palfi interviewed the witness in December. In his statement the witness identified the defendant and a fellow inmate Gantt as the victim's assailants.

In the interim, the defendant had a hearing on the incident before the Institutional Disciplinary Committee in July, 1980. At this hearing, the defendant requested that two inmates be summoned to testify in his behalf at the hearing. The prison authorities reported they were unable to locate such witnesses. The trial proceeded without the witnesses. The Committee found that the defendant had assaulted the victim, directed that he be placed in disciplinary segregation for sixty days and recommended to the United States Parole Commission that the defendant's parole date be rescinded. The defendant's parole date was later rescinded in line with the recommendation.

After taking the witness' statement, Agent Palfi became involved in a group of involved investigations, one concerning a kidnapping, another a bribery case and still another of attempted escape. Moreover, there was a backlog in the stenographic pool of the FBI office. As a consequence, Palfi did not submit his report on his investigation in this case to the District Attorney's office until September, 1981. His report, which consisted of thirty pages, was thorough and detailed. The District Attorney's office proceeded promptly with an indictment of the defendant and the defendant was brought to trial approximately three months later.

At this trial, the District Court, on its own motion, without any request from the defendant or his attorney, called on the Government "to prove the reasonableness of the delay in this case." After hearing Agent Palfi's testimony on that issue, the Court refused to dismiss the indictment. In so ruling, it found no unreasonable delay between the receipt of the FBI Agent's report by the District Attorney and the trial. As to any prior delay, it found that there was no evidence of prejudice suffered by the defendant and no seasonable request for trial by the defendant. The trial proceeded but resulted in a mistrial on motion of the defendant.

At the next trial, a few weeks later, the defendant was represented by new counsel, who moved to dismiss the indictment both on due process and speedy trial grounds under the Fifth and Sixth Amendments and under Rule 48(b), Fed.R.Crim.P. The District Court had a hearing and received testimony on the motion. The District Court then ruled that the delay from the middle of December, 1980, until September or October, 1981, when the FBI reported to the District Attorney represented "unnecessary delay" within Rule 48(b), and dismissed the indictment.

 While the District Court ordered dismissal under Rule 48(b), the defendant had relied, also, on the due process clause and the speedy trial provisions of the Fifth and Sixth Amendments. Critical, however, to all those claims is the determination of the date of the defendant's arrest under the charges, since the defendant concedes that any rights under both Rule 48(b) and the speedy trial clause of the Sixth Amendment are confined strictly "to post-arrest situations," *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). Accordingly, the dispositive ques-

tion on the defendant's claims on these two grounds is whether his segregative confinement immediately after the assault constituted an arrest within the intendment of the Rules and the constitutional provisions. In all the cases where this question has been directly addressed, the courts have found that segregative confinement of a prison inmate is not the equivalent of an arrest for purposes either of the Rule or of the constitutional provisions. *United States v. Mills,* 641 F.2d 785, 787 (9th Cir. 1981), *cert. denied,* 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221; *United States v. Blevins,* 593 F.2d 646, 647 (5th Cir.1979); *United States v. Bambulas,* 571 F.2d 525, 527 (10th Cir.1978); *United States v. Duke,* 527 F.2d 386, 389–91 (5th Cir.1976), *cert. denied,* 426 U.S. 592, 96 S.Ct. 3177, 49 L.Ed.2d 1190.[1] We see no reason to depart from the rule stated in these cases. Moreover, the defendant was released from segregative confinement in September, 1980. The delay which the District Court found to be "unnecessary delay" was that from December, 1980, to October, 1981, a period during which the defendant was not in segregative confinement but was in the general prison population. That period when the defendant was no longer in segregative confinement could not, under any circumstances, be considered in resolving the defendant's claim under either Rule 48(b) or the speedy trial constitutional provisions. *United States v. MacDonald,* 456 U.S. 1, 7, n. 7, 102 S.Ct. 1497, 1501, n. 7, 71 L.Ed.2d 696, 703, n. 7 (1982). It is thus manifest that the action of the District Court in dismissing the indictment herein under Rule 48(b) was clearly erroneous as a matter of law.

While the District Court did not rule on the due process claim of the defendant, it is obvious, that such a claim is without merit. A right to relief under the due process

---

1. The reasoning behind this ruling was stated in *United States v. Mills,* 641 F.2d at 787:

"The prison discipline did not focus public obloquy upon appellants, did not disrupt their 'employment' or drain appellants' financial resources. In short, it was not a public act with public ramifications, but a private act. Actual physical restraint may have in-

creased and free association diminished, but unless we were to say that imprisonment *ipso facto* is a continuing arrest, these criteria bear little weight in the peculiar context of a penal institution where the curtailment of liberty is the general rule, not the exception."

clause for pre-arrest delay requires a showing of prejudice made promptly. There was no such showing in this case. The defendant's only possible claim of prejudice related to the unavailability of the two fellow inmate witnesses he sought. The delay, however, did not create their unavailability. They had been unavailable at the prison disciplinary hearing in June, 1980, and presumably were unavailable at all times since. Further, the testimony of these witnesses was not relevant. Neither was a witness to the assault or could have provided any defense for the defendant's attack upon the victim with a deadly weapon as the latter sat watching television.[2] And the District Court so found at the first trial and did not depart from this ruling at the second trial.

The cause is accordingly remanded to the District Court with instructions to reinstate the indictment and to set the same for trial.

REVERSED WITH INSTRUCTIONS.

---

**2.** *See Northern v. United States,* 455 F.2d 427, 430 (9th Cir.1972):

"The fact that appellant was unable to locate two prospective witnesses is of no moment since, as appears from the record, the subject about which he proposed to interrogate them was irrelevant to the charge against him."