850 F.2d 690
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary O. BLACK, Defendant-Appellant.
 No. 87-5112.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 11, 1988.
Decided: July 1, 1988.
 
 Charles Shepherd Cox, Jr., for appellant
 John T. Martin and Ellyn M. Lindsay, for appellee.
 Before WIDENER and CHAPMAN, Circuit Judges, and JAMES B. McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Gary O. Black, Appellant, was convicted in the United States District Court for the Eastern District of Virginia at Alexandria, of the unlawful possession of Pentozocine, a controlled substance, and was sentenced to prison. He appealed.
 
 
 2
 Appellant contends (1) that the alleged controlled substance, Pentozocine tablets, should not have been admitted into evidence because (a) there was no evidence to show that he ever had the tablets in his possession and (b) there was a break in the testimony regarding the "chain of custody" of the controlled substance between its seizure and its appearance in the courtroom. He also contends (2) that his rights to speedy trial under the Speedy Trial Act, 18 U.S.C. Sec. 3161, et seq., and under the Sixth Amendment to the United States Constitution, were violated.
 
 
 3
 We conclude (1) that the trial judge did not err by admitting the controlled substance into evidence, and (2) that appellant's rights to speedy trial were not violated. We affirm.
 
 I.
 
 4
 Appellant was a prisoner in the Quadrangle of Lorton Penitentiary in Virginia on July 19, 1986. He was searched by Lt. Roy Grillo, No. 3 Shift Lieutenant, and others. Lt. Grillo filed a report on that day reading as follows:
 
 
 5
 "On Saturday, July 19, 1986, at approximately 8:40 p.m. while conducting a routine dormitory inspection, the undersigned observed approximately twenty (20) residence [sic ] participating in a dice game in the recreation yard of No. 8 Dormitory.
 
 
 6
 Resident Gary O. Black DCDC # 186640 was caught attempting to leave the area and a search revealed that the resident had on his person twenty-one dollars and 9 sets of T's & P's. The resident had four five dollar bills of which the serial numbers are E64946766A, E76978928A, L18282665B, E91359890A and one one dollar bill of which the serial number is E09658693D.
 
 
 7
 The money and the nine sets of T's & P's were placed in an evidence bag, labeled and turned over to the Shift Supervisor. Resident Black was placed in the Control Building and his property was secured and inventoried by Officers Fisher and Wynne.
 
 
 8
 Submitted for your information and the record."
 
 
 9
 Joint Appendix 161.
 
 
 10
 In his testimony, Lt. Grillo confirmed all the statements in his contemporary July 19, 1986, report. Grillo testified that he found some sets of "T's and P's" in a pouch in appellant's shorts (J.A. 16, 17). "T's and P's" contain Pentozocine, which is a contraband narcotic. He put the drugs inside an evidence bag, marked it in his own handwriting (J.A. 40) as having been found during a search of Gary Black, dated it "July 19, 1986," and turned it over to the shift supervisor (J.A. 16, 17, 18, 29, 30, 31). The pouch was maintained in the evidence safe until "November of last year" (J.A. 31), after which it appears to have been destroyed (J.A. 32).
 
 
 11
 The seized drugs, according to Lt. Grillo, were handled in accordance with the customary practice for handling contraband (T. 27, 42, 43).
 
 
 12
 In another part of his testimony, Grillo conceded that the shift supervisor might have been the one who gave the material to Lt. Moran, the Security Officer, which, if true, would raise a question as to the precise chain of custody, but would not prevent a trier of fact from finding the facts as Lt. Grillo reported in writing on July 19, 1986, and as he testified at the trial.
 
 
 13
 The shift supervisor, the "middle man," did not testify, but Lt. Moran and Lt. Grillo did testify.
 
 
 14
 Appellant claims that this "break in the testimony" as to the chain of custody is fatal to the prosecution's case.
 
 
 15
 In United States v. Howard-Arias, 679 F.2d 363 (4th Cir.), cert. denied, 459 U.S. 874 (1982), this court explained that the purpose of the "chain of custody" rule is to establish that the item to be introduced is what it purports to be, and held that a "missing link" in the chain of custody does not render the evidence inadmissible so long as the court, in its discretion, determines that the evidence has been sufficiently authenticated.
 
 
 16
 The trial judge did not abuse his discretion in finding the authentication testimony of Lieutenants Grillo and Moran sufficient to prove that the pills were what they purported to be, i.e., the drugs seized from defendant, and the evidence was appropriately admitted.
 
 
 17
 Although the testimony does not totally exclude the possibility of a mistake, and there were no eye witnesses to cover by direct testimony every moment of time from seizure to destruction of this contraband, a reasonable jury could have found, as this one did, that the seized tablets were in fact illegal drugs.
 
 II
 
 18
 Defendant maintains that his rights to a speedy trial under the Speedy Trial Act, 18 U.S.C. Sec. 3161(b) and (c), and the Sixth Amendment to the United States Constitution, were violated because nine months passed between the time the alleged offense occurred and the date of indictment and over seventy (70) days passed between the day of indictment and trial.
 
 
 19
 Section 3161(c) requires that an indictment be filed within thirty days from the date on which the individual is arrested or served with a summons in connection with the alleged criminal offenses. The events giving rise to this action occurred on July 19, 1986, the date the suspected drugs were allegedly found on defendant's person, and defendant was not indicted until April 21, 1987.
 
 
 20
 The actions taken at the Lorton Reformatory on July 19, 1986, do not constitute an "arrest" for purposes of the Speedy Trial Act, United States v. Daniels, 698 F.2d 221, 223 (4th Cir.1983) (Segregative confinement of a prison inmate is not the equivalent of "arrest" for purposes of either the Speedy Trial Act or the Sixth Amendment, and under no circumstances could the time spent by the defendant outside of segregative confinement be considered in resolving the defendant's speedy trial claims.) Therefore, the indictment on April 21, 1987, though nine months after the alleged offense occurred, was not beyond the time limits prescribed by the Act.
 
 
 21
 Section 3161(c)(1) of the Speedy Trial Act requires that the criminal defendant be tried within seventy days of his indictment or from the date that he has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. Appellant was tried seventy-one days from his indictment but only sixty-two days after his arraignment. Again, the Speedy Trial Act was not violated.
 
 
 22
 Appellant's Sixth Amendment claim also lacks merit because there is no evidence of prejudice resulting from the government's delay in prosecuting this action.
 
 
 23
 We find no error in the lower court's conclusions.
 
 
 24
 The exceptions of the appellant are overruled and the judgment of the lower court is affirmed.