PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-1601

———————

UNITED STATES OF AMERICA

v.

JAMES BAILEY-SNYDER,
                    Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-16-cr-00175-001)
District Judge: Honorable Malachy E. Mannion

———————

Argued February 6, 2019
Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit
Judges*.

(Filed: May 3, 2019)

Todd K. Hinkley [Argued]
Office of United States Attorney
235 North Washington Avenue

P.O. Box 309, Suite 311
Scranton, PA 18503
  *Attorneys for Appellee*

Brandon R. Reish [Argued]
31 North 7th Street
Strousburg, PA 18360
  *Attorney for Appellant*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

This appeal presents a question of first impression in this Court: does an inmate's placement in administrative segregation while he is under investigation for a new crime trigger his right to a speedy trial under the Sixth Amendment or the Speedy Trial Act? We hold it does not, so Bailey-Snyder was not entitled to dismissal of his complaint. Nor was there improper vouching or cumulative error in Bailey-Snyder's trial. We will affirm.

I

While incarcerated at the Federal Correctional Institution, Schuylkill, James Bailey-Snyder was moved to administrative segregation after officers found a seven-inch homemade plastic weapon (shank) on his person. *United States v. Bailey-Snyder*, 2017 WL 6055344, at *1 (M.D. Pa. Dec. 7, 2017). He remained in isolation in the Special Handling Unit (SHU) pending further investigation by the FBI. *Id.*

2

Ten months later, Bailey-Snyder was indicted in June 2016 on one count of possession of a prohibited object in prison. *Id.*; *see* 18 U.S.C. § 1791(a)(2), (b)(3). He pleaded not guilty and filed a number of motions for extension before filing a motion to dismiss in November 2017. *Bailey-Snyder*, 2017 WL 6055344, at *1. Focusing on his placement in administrative segregation as the start of the speedy trial clock, Bailey-Snyder moved to dismiss his indictment, alleging violations of his constitutional and statutory rights to a speedy trial. *Id.*

The District Court denied the motion to dismiss without an evidentiary hearing, reasoning that placement in the SHU does not constitute an arrest or accusation that would trigger speedy trial rights. *See id.* at *2. The case went to trial a month later.

The trial focused on the credibility of the two officers who testified that they found a shank on Bailey-Snyder's person when they searched him in a staff bathroom that was not equipped with cameras. In an effort to undermine the officers' credibility, defense counsel cross-examined them regarding the Bureau of Prisons incentive programs for recovering contraband. On redirect, the Government elicited that the programs do not reward individual contraband recoveries and that one of the officers did not receive any award for the search of Bailey-Snyder. The other officer had made similar points during the defense's cross-examination. Neither officer discussed the potential consequences they would face for planting a shank on an inmate and then lying about it. The Government's only other witness was the FBI agent who investigated the case. The defense rested without offering testimony or evidence.

3

Following the Court's charge to the jury, both parties gave closing statements. The Government's closing and rebuttal drew two defense objections relevant to this appeal. During summation, the prosecutor concluded: "I feel as if I'm not up here long enough. There really isn't much to say. The defendant is guilty of his crime and we're asking you to find him guilty of it. Thank you, your Honor." App. 232. The defense objected on the basis that the prosecutor expressed personal belief in the defendant's guilt; the District Court agreed, so the prosecutor had to make a corrected statement to the jury.[1] The defense's closing focused on the searching officers' "believability." App. 234. After tying "policy incentives of the Bureau of Prisons" to the searching officers' motives, the defense claimed: "[a]nd I wouldn't buy the home on the word of either of the two people that were on that stand if I were you." App. 234–35. In response to that challenge to the officers' credibility, the Government argued in rebuttal: "[i]t's conjecture to say that these correctional officers would put their jobs, their careers, their livelihoods on the line to possibly plant a shank on this defendant to maybe, maybe, have a little notch to get a promotion." App. 237. The defense objected, claiming the Government was "arguing a fact not in evidence," but the Court overruled the objection. App. 238.

---

[1] "Ladies and gentlemen, I think near the end of my oral argument to you I indicated that if you find that the defendant is guilty you should find him so. I think I may have mumbled during the beginning of that and said the defendant is guilty, you should find him guilty. What I really meant to say if you found, if within your common sense, and when you look at all the testimony and all the evidence presented, if you find that he's guilty you should find him guilty." App. 233–34.

4

The jury convicted Bailey-Snyder and he was sentenced to 30 months' imprisonment to run consecutively to his underlying offense of conviction. This timely appeal followed.

## II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III

The question whether speedy trial rights attach when a prisoner is placed in administrative segregation is one of first impression for our Court. Bailey-Snyder argues that the District Court should have dismissed his indictment because the 10 months and 18 days[2] between his placement in the SHU and his indictment violated his right to a speedy trial under the Sixth Amendment to the Constitution and the Speedy Trial Act.

## A

We begin with Bailey-Snyder's constitutional argument. The Sixth Amendment states: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and

---

[2] Although Bailey-Snyder's brief references "approximately eleven-month segregation," *e.g.*, Opening Br. 14, it also concedes we should not count "approximately 75 days" from this period because of "violations committed while in SHU." *Id.* So the time period at issue is closer to eight months. Bailey-Snyder also does not challenge the time between the indictment and trial.

public trial." U.S. CONST. amend. VI. This guarantee attaches at a defendant's arrest or indictment, whichever comes first, because it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion*, 404 U.S. 307, 313 (1971); *see id.* at 321 (declining to extend the constitutional speedy trial right "to the period prior to arrest"); *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014).

We again decline to extend the constitutional speedy trial right "to the period prior to arrest." *Id.* (quoting *Marion*, 404 U.S. at 321). Unlike police and prosecutors, the Bureau of Prisons does not operate in a prosecutorial posture when it decides to place prisoners in administrative segregation. Such decisions are not dependent on a decision to prosecute. Indeed, here it preceded any such decision. Prison officials instead segregate inmates for myriad reasons, including: investigation, discipline, protection, prevention, and transition. *See generally* FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT CPD/CSB 5270.10 (effective Aug. 1, 2011) (detailing objectives and policies of SHUs, including reasons for placement there), *superseded by* PROGRAM STATEMENT CPD/CSB 5270.11 (effective Nov. 23, 2016) (same). Neither the United States Attorney nor the FBI orders these placements and they are not typically notified when such placements are made. For that reason, SHU placements have their own administrative review and appeals processes. *See generally id.* (citing Administrative Remedy Program, 28 C.F.R. § 542, subpart B).

Our holding today is consistent with all five courts of appeals that have considered the issue. *See United States v. Wearing*, 837 F.3d 905, 909 (8th Cir. 2016) (per curiam); *United States v. Daniels*, 698 F.2d 221, 223 (4th Cir. 1983);

6

*United States v. Mills*, 641 F.2d 785, 787 (9th Cir. 1981); *United States v. Blevins*, 593 F.2d 646, 647 (5th Cir. 1979) (per curiam); *United States v. Bambulas*, 571 F.2d 525, 527 (10th Cir. 1978) (per curiam). Our sister courts have persuasively rebutted the reasons Bailey-Snyder asks us to break ranks with them. Citing the factors in *Marion* that inform the speedy trial right, Bailey-Snyder argues that SHU placement (like an arrest): restrains the inmate's liberty, worries friends and family, prevents the inmate from gathering evidence, and focuses the prison population's obloquy on the segregated inmate. But such placement occurs in "the peculiar context of a penal institution where the curtailment of liberty is the general rule, not the exception." *Daniels*, 698 F.2d at 223 n.1 (quoting *Mills*, 641 F.2d at 787). That administrative context explains why inmates like Bailey-Snyder have an opportunity to administratively challenge their segregation's length prior to arrest or accusation, and why administrative segregation does not constitute an arrest or public accusation for purposes of the Sixth Amendment right to a speedy trial.

In sum, because Bailey-Snyder was not arrested when he was placed in administrative segregation, his Sixth Amendment right to a speedy trial did not attach and his constitutional right was not violated.

B

We turn next to Bailey-Snyder's statutory argument. Congress enacted the Speedy Trial Act to give effect to the Sixth Amendment's speedy trial guarantee by setting time limits within which trials must begin. *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 (3d Cir. 1988). The Speedy Trial Act requires the Government to "file an indictment or information against a defendant 'within thirty days from the

7

date on which such individual was arrested or served with a summons in connection with such charges.'" *United States v. Oliver*, 238 F.3d 471, 473 (3d Cir. 2001) (quoting 18 U.S.C. § 3161(b)).

For the same reasons we rejected Bailey-Snyder's constitutional argument, we hold that administrative segregation is not an arrest for purposes of § 3161(b). In doing so, we again join every other circuit court of appeals that has addressed this question. *See Wearing*, 837 F.3d at 908 (per curiam); *United States v. Harris*, 12 F.3d 735, 736 (7th Cir. 1994); *United States v. Jackson*, 781 F.2d 1114, 1115 (5th Cir. 1986) (per curiam). Bailey-Snyder was already imprisoned for another offense, so several non-prosecutorial reasons justified his segregation once he was found in possession of a lethal weapon. Moreover, he could have challenged his prolonged SHU placement independent of the Speedy Trial Act. *See* Administrative Remedy Program, 28 C.F.R. § 542, subpart B; PROGRAM STATEMENT 5270.11.

IV

In addition to his legal arguments regarding his speedy trial rights, Bailey-Snyder claims he is entitled to a new trial because of improper comments by the prosecutor during his summation. Bailey-Snyder claims the prosecutor's comments about the credibility of the Government's two key witnesses constituted improper vouching.

Three things are required to reverse a conviction for improper vouching: (1) the prosecution assured the jury of its witnesses' credibility, (2) the assurance came from fact(s) not in the record, and (3) the assurance prejudiced the defendant. *See United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998);

*United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc). A statement that an "officer would be risking his career to lie under oath" may or may not constitute improper vouching, depending on the context. *United States v. Weatherly*, 525 F.3d 265, 271 (3d Cir. 2008).

In *Weatherly*, the prosecutor posed this rhetorical question to the jury: "Why would Officer[s] . . . risk their 32–34 years of experience on the police force over this case?" 525 F.3d at 271. We held that question was not improper for three reasons. *See id.* at 271–73. First, evidence in the record showed that discipline generally affects officers' careers, which allowed the jury to conclude that officers could risk their careers by committing misconduct. That defeated an element of improper vouching: fact(s) not of record. *See id.* at 271–72. Second, the prosecutor's question reasonably responded to the defense's own speculative attacks on the officers' credibility, which excused any impropriety. *See id.* at 272. And third, even if improper, the defendant was not prejudiced because the brief, isolated comment was responsive to defense attacks and because the judge had "thoroughly instructed" the jury that counsel's statements were not evidence. *Id.* at 272–73. We also noted that arguing an officer "had too much to lose to commit perjury merely to convict th[e] defendant" could be "a common sense conclusion" the prosecution may *properly* ask the jury to reach without evidence in the record to support it. *Id.* at 271 n.7 (quoting *United States v. Bethancourt*, 65 F.3d 1074, 1082 (3d Cir. 1995) (McKee, J., dissenting)). In other words, such a statement may not be improper vouching at all.

In this appeal, the Government's comment was similar to the rhetorical question in *Weatherly*. The prosecutor said: "It's conjecture to say that these correctional officers would put their jobs, their careers, their livelihoods on the line to possibly

9

plant a shank on this defendant to maybe, maybe, have a little notch to get a promotion." App. 237. We hold that this common sense conclusion was not improper vouching, even without explicit evidence in the record to support it. Although neither officer testified that they risked their jobs if they planted a shank on Bailey-Snyder, it should be obvious that falsifying evidence, filing dishonest sworn reports, and lying in open court should (and would) jeopardize one's career as a correctional officer. The Government's comment was "brief and appropriate," *Weatherly*, 525 F.3d at 272, and exactly "the kind of effective and logical response to an attack on an agent's credibility that has been made in countless numbers of closing arguments, and will be made in countless more." *Id.* at 271 n.7 (quoting *Bethancourt*, 65 F.3d at 1082 (McKee, J., dissenting)). Although there was no admitted evidence of discipline affecting these officers' careers—and although the Government's case depended entirely on the officers' testimony—the Government briefly responded to the defense's credibility attacks with a proper, common sense conclusion.

Also like in *Weatherly*, the challenged statement here does not involve the prosecutor "invok[ing] his own oath of office to defend the [officers'] credibility," which we have held to be improper. *Id.* (citing *United States v. Pungitore*, 910 F.2d 1084, 1125 (3d Cir. 1990)). In *Pungitore*, the prosecutor's improper vouching took the form of claiming "the U.S. Attorneys and law enforcement could not have behaved as unscrupulously as defense counsel alleged they did without violating their oaths of office and jeopardizing their careers." 910 F.2d at 1125. Here, the prosecutor did not invoke his oath of office. Indeed, the Government here did not "vouch" in the strictest sense of the word: it did not swear to or make promises about the officers' credibility. Instead, the Government

supported its witnesses' credibility by pointing out obvious consequences they would face for lying after the defense insinuated they had a motive to do so. The Government need not have elicited testimony or admitted evidence that planting evidence and then lying about it under oath would harm their careers before saying so in rebuttal.

We also note that, even if the Government's comment were improper vouching, it still would be excusable here as "a reasonable response to allegations of perjury by [the defense.]" *Weatherly*, 525 F.3d at 272. As in *Weatherly*, Bailey-Snyder's single theory was that the officers who discovered the shank had a motive (the prison's incentive policies) and opportunity to fabricate doing so. *See id.* The defense's closing focused on those motives and incentives to find shanks, even though nothing in the record established they affected these officers. So the defense speculated about the officers' motives, and the Government's brief, logical response appropriately characterized that as "conjecture." App. 237; *see Weatherly*, 525 F.3d at 272.

V

Lastly, we address cumulative error. To reverse a conviction for cumulative error requires more than one error. *See United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992). And this is a demanding standard that warrants reversal only when the combined errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *Id.*

Because the Government's comment about its witnesses' credibility was proper, there is no error to compound with the Government's comment on Bailey-

Snyder's guilt. Even if there were unexcused improper vouching, the Government's brief comment about Bailey-Snyder's guilt was stricken by the Court, and immediately corrected by the Government itself. *See supra* Note 1. Furthermore, the Court had instructed the jury before closing that lawyers' statements, including those made in closing, are not evidence. These facts leave us with little reason to believe that the Government's statements improperly influenced the jury at all, let alone substantially. Thus, there was no cumulative error.

\* \* \*

The District Court did not err in denying Bailey-Snyder's motion to dismiss the indictment for a speedy trial violation. Nor was there improper vouching or cumulative error at trial. We will therefore affirm the judgment of conviction and sentence.