NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1667
_____

UNITED STATES OF AMERICA

v.

ANTHONY ROBINSON
a/k/a
ANTHONY HARRISON,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cr-00340-001)
District Judge: Honorable Michael M. Baylson
_____

Submitted Pursuant to L.A.R. 34.1(a) on
May 6, 2022
_____

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR., and PORTER, *Circuit Judges*

(Opinion filed: August 25, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*

## I.    Introduction

Anthony Robinson appeals his conviction for being in unlawful possession of a firearm as a person with a felony.  He alleges that the District Court violated the Federal Rules of Evidence and his constitutional rights.  For the following reasons, we disagree and will affirm the conviction.

## II.    Background

At 8:22 am, on April 17, 2019, a person called Philadelphia's 911 center describing a group of about six men "arguing" and "pulling out guns" near the intersection of "Brush and Price."  Audio Recording: 911 Call in *United States v. Robinson*, 21-1667, at 00:00-00:31 (Apr. 17, 2019) (on file with the Court).  The caller specifically identified "one guy pulling out the gun" as wearing a "grey sweatsuit with . . . some yellow writing on it and a yellow hat."  *Id.* at 00:43-00:54.  The caller also alerted 911 that the person with the gun was "going into the corner store."  *Id.* at 01:05-01:15.

The 911 operator then conveyed this information to police dispatch.  Within one minute of the 911 call, Officers Raheem Williams and Edwin Rodriguez responded to the dispatch.  The dispatcher reported a person with a gun and four to six males involved in a physical altercation at the intersection of Brush and Price.  The dispatcher also informed the officers that one individual, wearing a grey sweatsuit with yellow writing and a yellow hat, was armed and last seen going into a corner store.  When Officers Williams and Rodriguez arrived, they pulled their patrol car beside a person—Robinson—holding

a beverage and standing next to a vehicle across from a corner store.[1]  Robinson, wearing a grey sweatsuit and yellow hat, immediately began to run in the opposite direction from whence the patrol car approached.

Officers Williams and Rodriguez exited their patrol car and began pursuing Robinson on foot.  When Robinson slipped between two parked cars, Officer Rodriguez followed Robinson between the cars while Officer Williams cut behind another vehicle to intercept Robinson's path.  At this point, while Robinson was between the two vehicles, security footage caught a gun falling to the ground.  Officer Rodriguez later testified that he saw Robinson "drop an object" as Robinson ran around one of the vehicles.  App. Vol. II, 129.

Officer Williams intercepted Robinson's path, tackled Robinson, and a physical struggle between the two ensued.  Officer Rodriguez initially remained by the gun between the parked cars, but briefly left to assist Officer Williams before returning to retrieve the gun when a crowd began to form.  After retrieving the gun, Officer Rodriguez returned to the physical struggle with Robinson, which eventually led to Robinson's arrest.

During the struggle, individuals from the public began to encroach and form a crowd near the officers and Robinson.  Officer Rodriguez testified that Officer Williams directed the crowd to "back up" to "give [them] room to work."  App. Vol. II, 136.

---

[1] As the trial transcript notes, Robinson apparently went by both "Anthony Robinson" and "Anthony Harrison."  App. Vol. II, 81-85.  At times he used his father's last name, and at other times he used his mother's last name.  *Id*.  We use "Anthony Robinson" or "Robinson" consistently throughout this opinion.

However, after Officer Williams issued directions to "stay back," Officer Rodriguez yelled at the crowd to "back the F[uck] up" and pointed his service weapon at the onlookers. App. Vol. II, 153–54. The Philadelphia Police Department later opened a disciplinary investigation into Officer Rodriguez's conduct during this incident.

Federal prosecutors subsequently charged Robinson with violating 18 U.S.C. § 922(g)(1) for being in unlawful possession of a firearm as a person with a felony. Before trial, the District Court addressed several pre-trial motions from the Government and defense counsel. In relevant part, the District Court denied defense counsel's motion to exclude the 911 call and granted the Government's motion to exclude evidence about Officer Rodriguez's disciplinary investigation. At trial, the District Court also permitted the Government to introduce the police dispatch recording and testimony from a detective regarding the absence of gun fingerprint testing.

A jury convicted Robinson of violating 18 U.S.C. § 922(g)(1), and the District Court then sentenced Robinson to 108 months' imprisonment. Robinson now appeals that conviction and alleges that the District Court's pre-trial determinations and evidentiary rulings during trial violated the Federal Rules of Evidence and his constitutional rights.

III. **Discussion**

a. **Jurisdiction and Standard of Review**

As an offense arising under the laws of the United States, the District Court had original and exclusive jurisdiction over the proceedings pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

We review the District Court's evidentiary determinations for an abuse of discretion. *United States v. Tyson*, 947 F.3d 139, 142 (3d Cir. 2020) (citing *United States v. Higdon*, 638 F.3d 233, 238 (3d Cir. 2011)). But, where the District Court's rulings were based on an interpretation of the Federal Rules of Evidence, our review is plenary. *Id.* If a district court admits evidence in error, we will nonetheless affirm if the error was harmless; in other words, we will affirm if "it is highly probable that the error did not contribute to the judgment." *United States v. Boyd*, 999 F.3d 171, 184 (3d Cir. 2021) (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (emphasis omitted)).

### b. Analysis

#### i. The District Court Either Did Not Err, or the Error Was Harmless

##### 1. The 911 Call Was Admissible Under the Present-Sense Impression Exception

Robinson argues that the District Court admitted improper hearsay when it allowed the Government to play the 911 call describing a person with a gun as wearing a grey sweatsuit with yellow writing and a yellow hat. The Government counters that the call was admissible under the excited utterance and present-sense impression exceptions. We agree with the Government on the latter exception.[2]

---

[2] Because we conclude that the 911 call was admissible under the present-sense impression exception, we will not address the Government's other argument regarding admissibility under the excited utterance exception. *United States v. Bansal*, 663 F.3d 634, 664 (3d Cir. 2011) (declining to address two additional exceptions after determining that evidence was properly admitted under the first exception offered).

An otherwise inadmissible statement may be admitted under the present-sense impression exception provided for in Federal Rule of Evidence 803(1). A statement admitted under this exception must be a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009) (internal quotation marks omitted).

In the 911 call at issue, the caller's statements indicate that the person perceived an ongoing concern as it was happening. The caller described a group of about six men "arguing" and "pulling out guns" near the intersection of "Brush and Price." Audio Recording: 911 Call in *United States v. Robinson*, 21-1667, at 00:10-00:31 (Apr. 17, 2019) (on file with the Court). The caller specifically identified "one guy pulling out the gun" as wearing a "grey sweatsuit with . . . some yellow writing on it and a yellow hat." *Id.* at 00:43-00:54. The caller also informed 911 that the person with the gun was "going into the corner store." *Id.* at 01:05-01:15. The caller's present-tense language and real-time description indicates that the caller personally perceived the event and that the recorded declaration was contemporaneous.

As these factors satisfy our requirement for application of the present-sense impression exception, the District Court properly admitted the 911 call. *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998).

6

## 2. The Police Dispatch Recording Was Inadmissible, but the Error Was Harmless

Robinson raises a meritorious argument that the police dispatch recording was inadmissible. Nevertheless, this error was harmless given the admissibility of the preceding 911 call.

Police officers may testify to "information received out-of-court for the limited purpose of establishing background for the officers' actions." *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993) (citations omitted). Yet, our Court has recognized that such testimony is "an area of 'widespread abuse.'" *Id.* (quoting *2 McCormick on Evidence* § 249, at 104 (4th ed. 1992)). In that vein, police dispatch recordings are impermissible hearsay if they merely "serve[] the substantive purpose of corroborating [other] testimony." *United States v. Price*, 458 F.3d 202, 206 (3d Cir. 2006).

Here, the police dispatch recording was likely not simple background information. The call from dispatch provided essentially the same information to the officers as the caller provided to 911. Since the prosecution presented these recordings chronologically, the jury heard the 911 call first. The prosecution's direct examination then informed the jury that police were dispatched to the identified intersection within one minute of the 911 call. Officer Rodriguez next testified about what he saw when he arrived, specifically, Robinson's clothes and flight. This testimony should have been enough

background information to explain why the officers acted as they did. *See Sallins*, 993 F.2d at 346.[3]

It is not unreasonable to conclude that a lay person hearing the police dispatch recording, in conjunction with the 911 call, could interpret the dispatch recording as "substantive corroboration" of the 911 caller's description. *Price*, 458 F.3d at 206. This corroboration is impermissible hearsay, and the police dispatch recording should not have been admitted.

Nonetheless, the District Court properly admitted the 911 call. The 911 call conveyed substantially the same information as the police dispatch recording; therefore, the improper admission of the police dispatch recording was harmless error.

---

[3] In *Sallins*, we likewise scrutinized the use of a police dispatch call. In determining that the disputed call was unnecessary, we made several statements relevant to the issue now before us:

> The facts of the present case undermine the government's position that testimony regarding the police radio call was admissible as background to explain why Santiago and Howard went to North Franklin Street and arrested Sallins. First, to the extent that any background was needed to explain why Santiago and Howard sped onto North Franklin Street, the government simply could have elicited testimony that the officers were responding to a radio call or information received. Second, no background beyond what the officers testified they observed was necessary to help the jury understand why Santiago and Howard pursued and arrested Sallins. Santiago stated that when Sallins looked toward the marked police car, he threw down what looked like a gun and ran. Santiago also testified that he recovered a gun from the very location where he believed he saw Sallins throw one. This testimony was more than sufficient to explain why Santiago and Howard acted as they did. Additional background was unnecessary.

*Sallins*, 993 F.2d at 346–47.

### 3. The District Court Properly Precluded Cross-Examination on the Disciplinary Investigation

Robinson next argues that the District Court should have permitted his counsel to cross-examine Officer Rodriguez on the Philadelphia Police Department's disciplinary investigation following Robinson's arrest. We disagree.

A fundamental tenet of the Federal Rules of Evidence is that evidence must be relevant. Evidence is relevant if: (1) it tends to make a fact "more or less probable[,]" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, evidence that Robinson's counsel sought to solicit during cross-examination would have no consequence in determining the action. Robinson's counsel attempted to introduce information about Officer Rodriguez's pending disciplinary investigation for yelling at a crowd of onlookers and pointing a gun in their direction during Robinson's arrest. Counsel stated that information about the disciplinary investigation could show that Rodriguez had a bias and "motive to curry favor with the Government," thus undermining Rodriguez's testimony that "he saw Mr. [Robinson] in possession of the gun." App. Vol. II, 90. The District Court correctly concluded that one thing does not "follow[] from the other." App. Vol. II, 90.

While Officer Rodriguez's actions exhibited poor judgment, the disciplinary investigation had nothing to do with whether Robinson possessed the gun found at the scene. Accordingly, the District Court properly precluded defense counsel from introducing evidence related to the disciplinary investigation.

9

### 4. The Testimony on Gun Fingerprinting Was Admissible, or Otherwise Harmless

The District Court permitted Detective Christian Chavez to testify as a lay witness regarding gun fingerprinting. Robinson argues that some of Detective Chavez's statements were improper expert testimony. We disagree.

The Federal Rules of Evidence expressly proscribe lay witnesses giving testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Instead, a lay witness may offer opinion testimony only if it is: "(a) rationally based on the witness's perception; [and] (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." *Id.* Our Court has explained that even where lay opinion "testimony is of a specialized or technical nature[,]" an expert is not always needed if that "lay witness has particularized knowledge by virtue of her experience . . . because the testimony is based upon the layperson's [sic] personal knowledge rather than on specialized knowledge within the scope of Rule 702." *United States v. Fulton*, 837 F.3d 281, 301 (3d Cir. 2016) (quoting *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)). Such is the case here.

Detective Chavez's testimony explained why he did not submit the gun for fingerprinting. In the disputed testimony, Detective Chavez commented, "We typically don't fingerprint firearms, it's very difficult to get fingerprints from a firearm." App. Vol. II, 224. Detective Chavez's explanation was likely helpful to the trier of fact in determining why Detective Chavez did not take the investigative step to test the gun.

10

Further, the testimony could fall within the bounds of Rule 701 as long as it was "based upon [Detective Chavez's] personal knowledge." *Fulton*, 837 F. 3d at 301. At the time of his testimony, Detective Chavez had been with the police department for eight years and had worked "hundreds of gun cases." App. Vol. II, 231. Therefore, the difficulty of obtaining fingerprints from guns could fall under what is "particularized knowledge by virtue of h[is] experience." *Fulton*, 837 F. 3d at 301.

In any case, Chavez's testimony on gun fingerprints appears to be limited to a single statement where there was substantial evidence that was undoubtedly admissible. Thus, even if it was inadmissible, its admission would be harmless error. Accordingly, the contested statement was admissible.

### ii. The District Court Did Not Violate Robinson's Constitutional Rights

#### 1. Admitting the 911 Call Did Not Violate the Confrontation Clause

Robinson's first constitutional claim asserts that the District Court violated his Sixth Amendment right under the Confrontation Clause by admitting the 911 call. We disagree.

The Sixth Amendment provides that an accused person "shall enjoy the right . . . to be confronted with the witnesses against him." *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012) (alteration in original) (quoting U.S. Const. amend. VI). The Confrontation Clause "is concerned with 'testimonial' hearsay." *Id.* (quoting *Crawford v. Washington,* 541 U.S. 36, 51 (2004)). Yet, statements do not offend the constitutional right when the statements are "made in the course of police interrogation under

11

circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

Admitting the 911 call did not offend Robinson's Sixth Amendment right to confront a witness against him. The 911 caller relayed information in real time about a group of people arguing and a person with a gun displaying a firearm. The recording unambiguously indicates that: (1) the 911 caller sought police assistance with an ongoing matter; (2) the caller relayed information to the police for the purpose of receiving this assistance; and (3) the operator did not ask unnecessary questions that could be interpreted "to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. at 822.

Accordingly, by admitting the 911 call, the District Court did not violate Robinson's Sixth Amendment right.

### 2. The Prosecutor's Statement During Closing Argument Was Permissible, or Otherwise Harmless

Robinson's last constitutional claim asserts that the prosecution improperly shifted the overall burden of proof to the defense. Again, we disagree.

It is well settled that prosecutors "may not improperly suggest that the defendant has the burden to produce evidence." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996), *as amended* (Aug. 16, 1996) (citations omitted). This prohibition, however, does not extend to comments "attempt[ing] to focus the jury's attention on holes in the defense's theory." *Id.* at 441. Thus, where defense counsel puts on a case, the

12

prosecution may use its closing argument to issue a "comment that points to a lack of evidence in the record which supports a defendant's argument." *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998).

Here, Robinson's trial counsel put on a case. On appeal, Robinson asserts that the prosecutor improperly commented, "You know who else could have asked to get the evidence tested, any time they wanted?" App. Vol. II, 283. The purported implication of this statement, from Robinson's point of view, being that Robinson carried the burden of proving his innocence with evidence that he did not possess the gun.

The prosecutor made the disputed comment in response to the defense's theory that Robinson "never touched the gun" and that the prosecution failed to put forth DNA evidence to support its assertion that the gun belonged to Robinson. App. Vol. II, 276. In this context, the prosecutor's comments responded to defense counsel's failure to present evidence that Robinson never touched the gun. *See Balter*, 91 F.3d at 441. Thus, "[t]he rhetorical question merely point[ed] to a lack of evidence produced by [Robinson] in support of his claim." *Walker*, F.3d at 189. Therefore, the comment was not improper.

Nevertheless, even if the comment was improper, it was harmless given the other admissible evidence in the record against Robinson.

### iii. There Is No Cumulative Error Warranting Reversal

By its name, "revers[ing] a conviction for cumulative error requires more than one error." *United States v. Bailey-Snyder*, 923 F.3d 289, 296 (3d Cir. 2019) (citing *United States v. Hill*, 976 F. 2d 132, 145 (3d Cir. 1992)). Even more, this "demanding standard" permits reversal "only when the combined errors 'so infected the jury's deliberations that

13

they had a substantial influence on the outcome of the trial.'" *Id.* (quoting *Hill*, 976 F.2d at 145).

For all but one of Robinson's claims, we have concluded that the District Court either did not err, or, if there was error, the error was harmless. Consequently, we do not hold that there was cumulative error mandating reversal.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.