NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3078
_____

UNITED STATES OF AMERICA

v.

TRAVIS PARKER,

Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-19-cr-00227-001)
District Judge: Honorable Christopher C. Conner

_____

Submitted under Third Circuit LAR 34.1(a)
on July 8, 2022

Before: SHWARTZ, KRAUSE and ROTH, Circuit Judges

(Opinion filed: June 22, 2023)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, <u>Circuit Judge</u>

The government prosecuted Travis Parker for possessing with intent to distribute and distributing cocaine.  At trial, the jury inadvertently received evidence that Parker was previously convicted of a serious drug felony.  As a result, the District Court declared a mistrial.  The government retried Parker, and a new jury convicted him on all counts.

Parker challenges his conviction on four grounds:  (1) the District Court erred in denying his motion to suppress evidence of the cocaine found on him; (2) the prosecutor purposefully provoked the mistrial; thus, the Fifth Amendment's Double Jeopardy Clause precluded the government from retrying him; (3) the prosecutor improperly vouched for the credibility of government witnesses; and (4) the prosecutor commented on facts not in evidence.  Because we hold that each of Parker's claims is unavailing, we will affirm the District Court's judgment of conviction.

I.

A confidential informant told police that he could buy crack cocaine from a drug dealer.  The informant gave police the dealer's phone number.  A detective recognized the number from one of his previous investigations as Parker's.  At the direction of the police, the informant called the number to order cocaine.  After police searched the information to confirm he had no contraband, they watched from a distance while the informant bought drugs.

One of the detectives could see the informant engaging in a hand-to-hand transaction with someone in a breezeway but could not see the person in the breezeway.

Another police officer, however, saw Parker walk in and out of the breezeway around the time of the transaction. The officer testified that he saw no one else go in or out of the breezeway. After the transaction, the informant returned to the police and turned over crack cocaine that he had bought.

Several months later, police worked with the same informant to set up another drug purchase from Parker. The informant called the same phone number that he had called before and agreed to meet Parker at a particular city block. When Parker arrived, police arrested him.

A police officer working on the investigation knew from experience that drug dealers sometimes hide drugs in their anal cavity. The officer's general knowledge was consistent with what the police knew about Parker specifically: the informant had told police that Parker hid cocaine in his anal cavity; another informant had told police the same thing. After the police arrested Parker, they strip-searched him. They found a bag of cocaine in his anal cavity. The bag contained about 33 grams of crack cocaine and about 33 grams of powder cocaine.

A grand jury charged Parker with one count of distributing cocaine and two counts of possessing cocaine with the intent to distribute it. Parker also had a prior conviction for a serious drug felony. Such a prior conviction would increase the penalty he faced.[1]

At the District Court, as on this appeal, Parker represented himself. Parker moved to suppress evidence of the cocaine that police had found on him. After holding an

---

[1] 21 U.S.C. § 841(b)(1)(B).

evidentiary hearing, the District Court denied the motion.  The case then proceeded to trial.  At the conclusion of trial, the District Court declared a mistrial.  In a scheduling order issued after the mistrial, the District Court explained that it "declared a mistrial after learning that the jury had inadvertently received evidence of Parker's prior convictions during phase one of their deliberations, which evidence was prejudicial to Parker and intended for use only during phase two of their deliberations."[2]  The government retried Parker, and a new jury found him guilty on all counts.  Parker appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.

"We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts."[3]  We review Parker's "double jeopardy claim for plain error since he did not raise the issue before the District Court."[4]  For the same reason, we review Parker's claims of prosecutorial misconduct for plain error.[5]  For appellants, plain error is an unforgiving standard of review:

> there must be (1) error, (2) that is plain, and (3) that affects substantial rights.  In the ordinary case, an error affects substantial rights when it affected the outcome of the lower court proceedings.  If these conditions are met, we may

---

[2] Dist. Ct. Dkt. 171. at 1.
[3] *United States v. Murray*, 821 F.3d 386, 390–91 (3d Cir. 2016) (quoting *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011)).
[4] *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008).
[5] *Gov't of the Virgin Islands v. Mills*, 821 F.3d 448, 456 (3d Cir. 2016).

exercise our discretion to remedy the error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[6]

## III.

### A.

The District Court properly denied Parker's motion to suppress evidence of the cocaine found on him. The police lacked a warrant to search Parker. However, police do not need a warrant to search a suspect incident to his arrest.[7] Instead, "the constitutional validity of the search" depends on "the constitutional validity of the arrest."[8] Thus, to decide whether the search was lawful, we must examine whether the arrest was lawful.

The police also lacked a warrant to arrest Parker. A warrantless arrest is constitutional if police have probable cause to believe the suspect committed a crime.[9] There is no question that the police knew enough to cause a prudent man to believe that Parker had committed an offense: they saw the informant call Parker's number to order cocaine on two separate occasions, and saw Parker arrive at the agreed-upon place both times. On the first occasion, the informant returned with drugs that he had bought after police saw Parker, and no one else, in the area. On the second occasion, right before the arrest, Parker presumably had drugs to sell to the informant. Under these circumstances, the police had probable cause to arrest Parker. Thus, the arrest was lawful, and the police were allowed to search Parker incident to his arrest.

---

[6] *Id.* at 456–57 (cleaned up).
[7] *United States v. Kithcart*, 134 F.3d 529, 531 (3d Cir. 1998).
[8] *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).
[9] *See id.* (quoting *Beck*, 379 U.S. at 91).

Parker does not contest whether the police were allowed to strip-search him rather than perform a less intrusive search. Even if he did, however, that argument would fail. "Not every search is acceptable solely because a person is in custody."[10] The Supreme Court has not decided when the police may conduct an investigatory strip-search of a suspect incident to arrest, nor have we. Yet whatever the precise limits on this practice may be, the strip-search here was reasonable.

The police arrested Parker for a felony drug-trafficking offense. Two informants told the police that Parker kept cocaine in his anal cavity, and an officer working on the investigation knew from experience that drug dealers sometime hide drugs there. Furthermore, police searched him after he arrived at the spot where he had agreed to sell cocaine. Finally, the police protected Parker's privacy to the extent possible. Accordingly, the strip-search was reasonable.

B.

The Fifth Amendment's Double Jeopardy Clause did not preclude the government from retrying Parker. The Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense."[11] It does not, however, "offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding."[12] Generally, the government may retry a defendant

---

[10] *Riley v. California*, 573 U.S. 373, 392 (2014) (cleaned up) (quoting *Maryland v. King*, 569 U.S. 435, 463 (2013)).
[11] *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982).
[12] *Id.* at 672.

6

when, as here,[13] the defendant requests a mistrial.[14] Nonetheless, "the Double Jeopardy Clause forbids retrial when 'the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.'"[15]

The record here does not show that the prosecutor purposefully provoked a mistrial. The District Court declared a mistrial only "after learning that the jury had inadvertently received evidence of Parker's prior convictions."[16] Parker contends that the government purposefully gave this evidence to the jury because the government was concerned the verdict could go either way and the government would have a better chance at a second trial. However, Parker's contention is a bare assertion unsupported by anything in the record. Parker has therefore failed to show any error, much less plain error. Retrial did not violate the Double Jeopardy Clause.

## C.

A prosecutor improperly vouches for a witness when the prosecutor assures the jury of a witness's credibility, the assurance is based on facts not in the record, and the assurance prejudices the defendant.[17] Nonetheless, we held in *United States v. Bailey-Snyder* that a prosecutor may argue a "common sense conclusion" about a witness's trustworthiness "even without explicit evidence in the record to support it."[18] Thus, the

---

[13] Dist. Ct. Dkt. 171 ("upon *pro se* defendant Travis Parker's oral motion, the court declared a mistrial . . . ").
[14] *United States v. Brown*, 994 F.3d 147, 152 (3d Cir. 2021).
[15] *Id.* (quoting *Kennedy*, 456 U.S. at 679).
[16] Dist. Ct. Dkt. 171 at 1.
[17] *United States v. Bailey-Snyder*, 923 F.3d 289, 294–95 (3d Cir. 2019).
[18] *Id.* at 295.

prosecutor in *Bailey-Snyder* did not vouch for witnesses when he said, "It's conjecture to say that these correctional officers would put their jobs, their careers, their livelihoods on the line to possibly plant a shank on this defendant to maybe, maybe, have a little notch to get a promotion."[19] We reasoned that, "[a]lthough neither officer testified that they risked their jobs if they planted a shank on [the defendant], it should be obvious that falsifying evidence, filing dishonest sworn reports, and lying in open court should (and would) jeopardize one's career as a correctional officer."[20]

In *Bailey-Snyder*, the prosecutor was responding to the defense's credibility attacks.[21] Indeed, we held "that, even if the Government's comment were improper vouching, it still would be excusable here as a reasonable response to allegations of perjury by the defense."[22]

During Parker's closing argument, he had attacked the credibility of the police officers involved in his case. For instance, he said:

> I stood up to these corrupt cops. I don't despise law enforcement. This is a faction of York City police department called the Drug Task Force. I mean, they have their own building. And we all heard about the blue wall of silence. Police officers do commit crimes and they're found guilty of these, just like innocent citizens go to prison.[23]

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 296 (cleaned up) (quoting *United States v. Weatherly*, 525 F.3d 265, 272 (3d Cir. 2008)).

[23] App. at 480:2–7.

Parker also argued, for example, that if the police had truly found a bag with drugs in his anal cavity, there would be fecal matter or blood on it. In rebuttal, the prosecutor addressed the officers' credibility at length. Among other things, he said:

> You would have to conclude that these men and women would not only put their livelihoods, their family, their home life, but their actual liberty at stake for him? For who? For what? I mean, no offense, man, but he's not worth it. I mean that just is not a plausible theory, and if you're someone that is going to believe that there would be this type of corruption so breathtakingly pervasive, I'm probably already talking past you . . . .[24]

The prosecutor's argument that the police would not risk their career (and more) to frame Parker is precisely the "common sense conclusion" that *Bailey-Snyder* held to be permissible.[25] The prosecutor's argument that the police had no incentive to frame Parker is a close cousin of that same common sense conclusion. As in *Bailey-Snyder*, the prosecutor was responding to a defendant's attacks on credibility. We see no plain error in the prosecutor's statements. For that reason, Parker's vouching claim fails.

D.

Parker is correct that the prosecutor commented on facts not in evidence. However, the prosecutor's misstatement was not plain error that warrants reversal.

In closing argument, the prosecutor said:

> [E]ach and every time they attempted to buy drugs from Travis Parker, he showed up. They called, and he showed up. And quite frankly, that is a massive problem for Mr. Parker, because I don't know how you work your way around that fact. It wasn't someone else. It was Travis Parker. And he's the one that when he was taken into custody on January 30th, 2019 possessed a substantial amount of crack cocaine and powder cocaine. ***He had the phone with the informant's phone number in it.*** He came when

---

[24] *Id*. at 502:16–23.
[25] *Bailey-Snyder*, 923 F.3d at 295.

they called, and when you think about the significance of that, hopefully you'll get on the same page with me and attach the same significant to that piece of evidence.[26]

There is no direct evidence that Parker "had the phone with the informant's phone number in it."[27] Even if the government made a misstatement, it would have been harmless. Every time the informant called Parker's number to order cocaine, Parker showed up to sell cocaine. That evidence against Parker was crucial to his conviction and the prosecutor's misstatement does not detract from it.

Once again, we emphasize the high bar that Parker must clear to obtain relief under the plain error standard. It is not enough for Parker to show error in the prosecutor's purported misstatement. That error must be plain, affect substantial rights, and seriously affect "the fairness, integrity, or public reputation of judicial proceedings."[28] No such error exists here.

IV.

For the above reasons, we will affirm the District Court's judgment of conviction.

---

[26] App. at 470:14–471:2 (emphasis added).
[27] *Id*. at 470:22–23.
[28] *Mills*, 821 F.3d at 456–57.